Gazes LLC
32 Avenue of the Americas, 27th Floor
New York, New York 10013
(212) 765-9000
*Counsel for Chapter 7 Trustee*
Ian J. Gazes, Esq.
Jayson Jarushewsky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 7

FORTUNOFF HOLDINGS, LLC, and
FORTUNOFF CARD COMPANY, LLC,                    Case Nos. 09-10497 (RDD) and
                                                                    09-10500 (RDD)
                                    Debtor.           Jointly Administered
-------------------------------------------------------------x
IAN J. GAZES, as Chapter 7 Trustee of the
Estates of Fortunoff Holding, LLC and
Fortunoff Card Company, LLC,

                                    Plaintiff,           Adv. Pro. No. 10-03339 (RDD)

            - against –

NEW YORK STATE DEPARTMENT OF LABOR,

                                    Defendant.
-------------------------------------------------------------x

**ORDER TO SHOW CAUSE GRANTING A TEMPORARY RESTRAINING
ORDER AND SCHEDULING A FINAL HEARING ON
THE TRUSTEE'S MOTION FOR A PRELIMINARY INJUCTION**

            Upon the annexed motion dated June 29, 2010 with exhibits (the "Motion") of Ian

J. Gazes, the Chapter 7 Trustee (the "Trustee") of Fortunoff Holding, LLC and Fortunoff Card

Company, LLC (the "Debtors"), by his counsel Gazes LLC, and the Affidavit of Ian J. Gazes

dated June 28, 2010 pursuant to Local Bankruptcy Rule 9077-1 ("Affidavit") seeking, *inter alia*,

entry of this order to show cause temporarily restraining the New York State Department of

Labor (the "DOL") from proceeding with the administrative proceeding bearing Case No.

WARN 09-0004 commenced on or about November 4, 2009 (the "Administrative Action") filed

by the DOL seeking an award of back pay to former employees of the Debtors and penalties for alleged violation of Article 25-A of the New York State Labor Law more commonly known as the New York State Worker Adjustment and Retraining Notification Act ("NY WARN Act"), and this Court being satisfied that the Estates will suffer irreparable harm if the Administrative Action proceeds as the Estates' assets will be depleted in litigating identical claims in multiple forums, there is a likelihood of success by the Trustee on the merits and the balance of hardships tips decidedly in favor of the Trustee, and good and sufficient cause exists for the relief sought herein, it is therefore,

**ORDERED**, that that pending a final hearing on the Motion, the Administrative Action and any actions by the DOL in connection therewith are temporarily stayed; and it is further

**ORDERED**, that a final hearing (the "Hearing") on the Motion shall be held before the undersigned, at which time the DOL must show cause why the Trustee should not be granted a preliminary injunction enjoining the DOL from proceeding with the Administrative Action; and it is further

**ORDERED,** that the Hearing on the relief sought by the Motion shall be held before the Honorable Robert D. Drain, United States Bankruptcy Judge at Court Room # ___ on July ___, 2010 at 10:00 a.m. at the United States Bankruptcy Court, 300 Quarropas Street White Plains, New York at 10:00 a.m. of that day or as soon thereafter as counsel can be heard, at which time the parties receiving the Notice must show cause why the Motion should not be granted in its entirety; and it is further

**ORDERED,** that notice of the hearing by service of the attached Motion, Affidavit and Order to Show Cause with Exhibits by priority overnight courier on (a) the Office

of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Nazar Khodorovsky, Esq., (b) New York State Department of Labor, Room 508, Building 12, Governor Averell Harriman State Office Campus, Albany New York 12240, Attn: Kenneth L. Golden, Esq., counsel to the NYS Department of Labor, on or before the close of business on June __, 2010, shall be deemed to constitute good and sufficient service and notice hereof; and it is further

       **ORDERED**, that responses, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall set forth the name of the respondent, the nature of the objection and the specific grounds therefore, and state with particularity the grounds for such response and be filed with the Clerk of the Court, United States Bankruptcy Court, 300 Quarropas Street White Plains, New York (a)(i) through the Bankruptcy Court's electronic filing system (in accordance with General Order M-242, as amended by General Order M-269); or (b) if a party is unable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number of the document to which the objection refers, and the file name on the outside of the envelope. An objection filed by a party with no legal representation shall comply with section (b) as set forth in this paragraph. A hard copy of the objection, whether filed pursuant to section (a) or (b), as set forth in this paragraph, shall be hand-delivered directly to the Chambers of the Honorable Robert D. Drain, and served upon: (1) Gazes LLC, 32 Avenue of the Americas, 27th Floor, New York, NY 10013, Attn: Ian J. Gazes, Esq., attorneys for Ian J. Gazes, Chapter 7 Trustee; (2) the Office of the United States Trustee, attention Nazar Khodorovsky, 33 Whitehall Street, 21st Floor, New York, NY not later than 5:00 p.m. three (3) business days prior to the hearing. Only those

responses that are made in writing, and timely filed and received will be considered at the Hearing.

Dated: New York, New York
      June \_\_\_, 2010

                                                  _____

                                                  HON. ROBERT D. DRAIN
                                                  UNITED STATES BANKRUPTCY JUDGE

Gazes LLC
32 Avenue of the Americas, 27th Floor
New York, New York 10013
(212) 765-9000
*Counsel for Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                                    Chapter 7

FORTUNOFF HOLDINGS, LLC, and
FORTUNOFF CARD COMPANY, LLC,                Case Nos. 09-10497 (RDD) and
                                                                                    09-10500 (RDD)
                                    Debtor.                  Jointly Administered
-------------------------------------------------------------x
IAN J. GAZES, as Chapter 7 Trustee of the
Estates of Fortunoff Holding, LLC and
Fortunoff Card Company, LLC,
                                    Plaintiff,                  Adv. Pro. No. 10-03339 (RDD)
            - against –

NEW YORK STATE DEPARTMENT OF LABOR,

                                    Defendant.
-------------------------------------------------------------x

## MOTION IN SUPPORT OF ORDER TO
## SHOW CAUSE FOR A TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTION
## PURSUANT TO FRCP RULE 65 AND FRBP RULE
## 7065 AND SECTION 105 OF THE BANKRUTPCY CODE

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

Ian J. Gazes, the Chapter 7 Trustee (the "Trustee") of Fortunoff Holdings, LLC and

Fortunoff Card Company, LLC (the "Debtors"), by his counsel Gazes LLC, as and for his motion

(the "Motion") for the entry of an order temporarily restraining and preliminarily enjoining the

New York State Department of Labor ("DOL") from proceeding with an administrative action

before a hearing officer of the DOL bearing Case No. WARN 09-0004 (the "Administrative

1

Action") pursuant to 11 U.S.C. §105(a), Bankruptcy Rule 7065 and Rule 65 of the Federal Rules of Civil Procedure; and upon the accompanying Affidavit of Ian J. Gazes pursuant to Local Bankruptcy Rule 9077-1 of the Local Bankruptcy Rules of the Southern District of New York in Support of Motion for a Temporary Restraining Order and Preliminary Injunction (annexed hereto as Exhibit <u>A</u>), respectfully represents as follows:

<h2 style="text-align:center">I.    STATUS OF THE CASE</h2>

**1.**     To date, the Trustee has collected approximately $4,850,000. In addition the Trustee through counsel has served demands to avoid certain transfers under chapter 5 of the Bankruptcy Code aggregating approximately $80 million dollars. The Claims Register reflects approximately 3,600 proofs of claims aggregating approximately $516 million including $87.9 million of priority claims, which appear to represent primarily Warn Act claims.  There are approximately $1,036,260.24 in unpaid chapter 11 administrative expenses primarily representing the chapter 11 professionals. Approximately 1,100 proofs of claim have been filed by former employees or with respect to claims that may be asserted by former employees; the majority of these claims are brought under the WARN Act and/or the NY WARN Act, each as defined below.  Even a cursory review of the WARN Act claims indicates that many of these claims are overlapping and duplicative.  The Trustee submits that a cost-effective resolution of the WARN Act and NY WARN Act claims is critical to a successful and orderly liquidation of the Estates. In addition the Trustee believes the estates hold complete defenses to the Warn Act and NY WARN Act claims.

## II.     BACKGROUND

2.     On February 5, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  By order dated February 6, 2009, the Court directed the joint administration of the Debtors' bankruptcy cases [Docket No. 32].  Prior to the Petition Date, Fortunoff was a well-know retailer of house wares, furniture and jewelry with approximately twenty (20) stores located in New York, New Jersey, Connecticut and Pennsylvania.

3.     Prior to the petition date, on March 26, 2008, the Debtors purchased substantially all of the assets of Fortunoff Fine Jewelry and Silverware, LLC, M. Fortunoff of Westbury, LLC and Source Financing Corp. (collectively "FFJS"), in their chapter 11 cases which were commenced in this court on February 4, 2008 under Case No. 08-10353(JMP). The Debtor's purchase of the FFJS assets and the Debtors' subsequent operations were financed through loan facilities with Wells Fargo Retail Finance, LLC ("WF") and UBS Securities, LLC ("UBS") with WF as the collateral agent for the loan facility secured by substantially all of the Debtors' assets.

4.     A major part of the Debtors' business plan was to open Fortunoff jewelry stores within Lord & Taylor ("L&T") department stores and the Debtors spent substantial time, effort and money preparing for the "rollout" of inventory into the L&T stores which was to commence in late January to February of 2009.

5.     Prior to the Petition Date, on or about January 23, 2009, the Debtors' secured lender, Wells Fargo Retail Finance, LLC ("WF") advised the Debtors that any L&T inventory was not to be included in the Debtors' borrowing base for the loan facility.  On January 26, 2009, WF unexpectedly declared a default under the loan agreement with the Debtors and WF advised the Debtors that it would no longer make advances under the loan agreement alleging that certain inventory earmarked for L&T stores, some of which was in the Debtor's warehouse and some of

which was in transit to certain L&T stores, was improperly included in the borrowing base certificate provided by the Debtor and by excluding such inventory from the borrowing base, the collateral level fell below the minimum amount required under the loan facility.

6. At the insistence of WF, the Debtors entered into a forbearance agreement ("Forbearance Agreement") dated as of January 27, 2009 with WF whereby Debtors agreed to, *inter alia*, immediately commence efforts to either sell its business as a going concern or to sell all of its assets at going out of business sales and to file a bankruptcy proceeding in order to facilitate such sales. Conditioned on the execution of the Forbearance Agreement by the Debtors, WF agreed to provide limited financing, both pre-petition and post-petition debtor in possession financing, to enable the debtor to liquidate its assets through going out of business sales in the bankruptcy proceeding.

7. The Forbearance Agreement required the Debtors to (1) distribute "so called bid packages to all nationally recognized retail disposition companies" by January 30, 2009, (2) "On or before February 6, 2009, the Loan Parties [Debtors] shall have entered into a so called "stalking horse" agreement for the sale of the Loan Parties [Debtors] as a going concern or the sale of the Loan Parties' assets pursuant to "going out of business" sales, which "stalking horse agreement shall be upon terms and conditions acceptable to the Agents [WF] in its sole discretion."

8. Immediately upon the filing of the Debtors bankruptcy petition, the Debtors moved for approval of various "first day orders" to enable it to operate for the sole purpose of conducting a liquidation of its assets, including approval of debtor in possession financing for said purpose.

9. On February 6, 2009, one day after the Petition Date, the Debtors filed a motion to approve the procedures for the sale of substantially all of the Debtor's assets to liquidators and for the conduct of going out of business sales ("GOB Sales")[Docket No. 42]. This Court entered an

order on February 9, 2009 approving the sale, bidding and auction procedures and scheduled the auction for February 23, 2009 with a hearing on final approval of the sale scheduled for February 24, 2009 [Docket No. 57].  This Court entered an order approving the sale via an agency agreement between the Debtors and a joint venture comprised of Tiger Capital Group, LLC, SB Capital Group, LLC, Kimco Realty Services, Great American Group WF, LLC, Hudson Capital Partners, LLC, The Gordon Company, Inc. and Bobby Wilkerson, Inc. (the "JV")[Docket No. 370] whereby the JV would sell all of the Debtors' merchandise located in its stores, distribution center and warehouses at GOB Sales.

10.     The Debtor and the JV conducted the GOB Sales over the next four months.

11.     The Debtor also immediately took steps to reject leases and executory contracts and to sell all of its intellectual property in furtherance of its liquidation.

12.     On the Petition Date, the Debtors delivered notices to its employees advising that due to recent and unexpected circumstances beyond its control, it may have to close its facilities as it no longer had sufficient liquidity to pay its operating expenses going forward and would likely begin eliminating positions at its facilities beginning on February 13, 2009.

13.     The Debtors began terminating the employment of its employees on February 13, 2009 and continued to do so at the various store locations upon the conclusion of the GOB Sales.

14.     On February 11, 2009, the United States Trustee for the Southern District of New York  appointed a statutory committee of creditors pursuant to Section 1102 of the Bankruptcy Code (the "Creditors' Committee").

15.     On or about February 12, 2009, Joanne Iannacone, a former employee of the Debtor, on behalf of herself and other similarly situated former employees, commenced a purported class

action adversary proceeding in this Court asserting claims under the Worker Adjustment and Retraining Notification Act ("WARN Act") 29 U.S.C. §2101 *et seq.* ,and the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), New York Labor Law ("NYLL") §860 *et seq.* (the "Class Action"). The purported Class Action is currently pending and the parties have been engaged in informal discovery. Plaintiff's counsel in the Class Action has filed numerous proofs of claims on behalf of those employees allegedly holding both Warn Act and NY Warn Act claims.

16.     The Debtors filed an answer to the complaint in the Class Action asserting various affirmative defenses to the claims under both the WARN Act and the NY WARN Act including, the liquidating fiduciary defense, the unforeseen business circumstances defense, the faltering company defense and the good faith defense (collectively the "Affirmative Defenses").

17.     This Court entered an order on April 17, 2009 fixing June 5, 2009 as the last day for creditors to file proofs of claim in this bankruptcy proceeding ("Bar Date").

18.     On June 5, 2009, almost four (4) months after the commencement of the Class Action, the DOL filed two estimated proofs of claims in the alternative each in the amount of $5,308,801.50, one claiming administrative priority under Bankruptcy Code §503(b)(1) and the other claiming a pre-petition priority claim under Bankruptcy Code §507(a)(8)(G). As discussed below, the DOL has submitted to the to the jurisdiction of this Court by filing its proofs of claims.

19.     Approximately 1,100 proofs of claims have been filed by or on behalf of former employees many of which assert claims for damages under the WARN Act and/or the NY WARN Act.

20.     On October 1, 2009, the Court entered an order converting the Debtors' Chapter 11 bankruptcy cases to cases under Chapter 7 [Docket No. 945].  Thereafter, Ian J. Gazes was appointed interim Chapter 7 Trustee, who now serves as the permanent Trustee in these cases.

21.     Prior to the Conversion Date, the Debtors ceased business operations which were limited to the liquidation of its assets, and had disposed of substantially all of the Debtors' tangible and intangible assets.  The majority of executory contracts and all retail leases had been rejected or had expired under their own terms.  The Debtors' personnel had been reduced to a few employees who had been retained under the Debtors' Key Employee Retention Plan (the "Retention Plan"). (Docket No. 628)

22.     On November 4, 2009, the DOL commenced the Administrative Action.

23.     The Trustee has been cooperating with both the DOL and the plaintiff's attorneys in the Class Action and have provided, and continue to provide, numerous documents to both the DOL and the Class Action plaintiffs regarding both damage calculations and support for the Affirmative Defenses.

24.     The hearing in the Administrative Action has been adjourned several times while the parties attempted to resolve the matter and the final hearing is currently scheduled for July 15, 2010 and July 16, 2010. The DOL has refused to consent to adjourn the hearing any further.

25.     The Trustee, based on his review of the documents, the history of the pre and post bankruptcy events and the relative case law, believes that the estates have a complete defense based on any one of the Affirmative Defenses.

26.     The relief claimed and defenses asserted in the Administrative Action are identical to the claims and defenses asserted in the Class Action and also raised in the context of the numerous proofs of claims filed by the individual former employees.

27.     In addition to the Administrative Action, the NY WARN Act also authorizes the former employees of the Debtors' to commence their own private lawsuit(s) to assert such claims and the DOL has recently advised that any settlement reached between the Trustee and the DOL would not preclude individual lawsuits by the former employees. 25A NY Labor Law §860-I (2010) ("The rights and remedies provided to employees by this article are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies, except that the period of notification required by this article shall run concurrently with any period of notification required by contract or by any other statute.").

28.     The Administrative Action is duplicative of both the Class Action and the Trustee's potential claims objection motions, which may be filed in the Bankruptcy Proceeding and, therefore, the Administrative Action should be stayed and/or enjoined to permit the Trustee to either resolve or litigate all these claims in the Bankruptcy Court without the necessity of having to litigate the identical claims in the Administrative Action and the Bankruptcy Court, which would otherwise be a waste of estate assets.

## II. JURISDICTION

29.     The Court has jurisdiction over this Application pursuant to 28 U.S.C.§1334(b) and §157(b).

30.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1409(a). This is a core proceeding under 28 U.S.C. §157 (b) (2) (A), (E), (G), (H) and (O). The statutory predicates for the relief sought herein are §§ 105 and 362 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 7065.

## IV. RELIEF REQUESTED

31.     Pursuant to Bankruptcy Rule 7065 and Rule 65 of the Federal Rules of Civil Procedure, Plaintiff seeks a temporary restraining order and a preliminary injunction prohibiting the DOL from proceeding with the Administrative Action.

32.     The relief requested is necessary in order to prevent the depletion of the Estates' assets. The DOL has filed proofs of claims and submitted to the jurisdiction of this Court. Now it is seeking to pursue the Administrative Action. The Trustee submits that this Court should reject the DOL's attempt at forum shopping.  If the Administrative Action goes forward, the Trustee will be forced to litigate the same claims in the Administrative Action, the purported Class Action and the claims adjudication process. The Trustee anticipates that he will bring a motion to consolidate the various actions into a single proceeding before the Bankruptcy Court in order to have an orderly, cost-effective resolution of the WARN Act and NY WARN Act claims. It is unlikely that a global resolution could be reached if the DOL is permitted to pursue its own remedies in their own administrative forum.

1.     **THIS COURT CAN ENJOIN THE DOL FROM LITIGATING THE ADMINISTRATIVE PROCEEDING UNDER SECTION 105(a) OF THE BANKRUTPCY CODE._____**

33.     This Court can enjoin the Defendant under section 105(a) of the Bankruptcy Code.  11 U.S.C. §105(a); s*ee Securities Investor Protection Corp. v. Bernard L. Madoff Invest. Sec. LLC* (*In re Bernard L. Madoff*), 2010 Bankr. LEXIS 1150, 28-29 (Bankr. S.D.N.Y. 2010) (Bankruptcy courts are empowered to utilize their equitable powers under section 105 where appropriate to facilitate the implementation of the Bankruptcy Code.) (citing *Bessette v. Avco Fin. Servs. Inc.*, 230 F.3d 439, 444 (1st Cir. 2000); *see also Keene Corp. v. Coleman* (*In re Keene Corp.*) 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994) (the court can "enjoin an activity that

threatens the reorganization process or impairs the court's jurisdiction with respect to the case before it.")(*citing Alert Holdings, Inc. v. Interstate Protective Serv.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y 1992).

34.     Section 105(a) of the Bankruptcy Code permits a Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]. 11. U.S.C. §105(a). In *Madoff*, this court enjoined a Florida State Court Action from proceeding under section 105 of the Bankruptcy Code because it concluded that the state court litigation posed a substantial threat to the Bankruptcy Court's jurisdiction. *In re Bernard L. Madoff*, 2010 Bankr. LEXIS at 34-35. The court found that its jurisdiction was being substantially undermined where another court was determining how estate assets were being distributed. *Id*. at 37. (the State court actions could "substantially undermine this Court's jurisdiction, as further prosecution could ultimately result in another court's determining how potential estate funds are distributed…"); *see also Keene Corp.,* 164 B.R. at 849 and *AP Indus., Inc. v. SN Phelps & Co*. (*In re AP Indus, Inc.*) 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990) (The possibility of inconsistent judgments warrants the issuance of an injunction pursuant to section 105).

35.     Here, as in *Madoff*, the DOL is seeking to pursue its claims in another forum. This could result in the Administrative Action determining how estate assets should be distributed and such result could possibly conflict with this Court's determination of identical issues raised in either the purported Class Action or the claims adjudication process. Thus, this Court should enjoin the DOL from proceeding with the Administrative Action under section 105(a) of the Bankruptcy Code because the Administrative Action interferes with the administration of the bankruptcy case.

**2.    THIS COURT SHOULD PROHIBIT THE DOL FROM
        PROCEEDING WITH THE ADMINISTRATIVE ACTION
        PURSUANT TO BANKRUPTCY RULE 7065._____**

36.     Even if this Court determines that the Trustee has not satisfied the requirements

under section 105(a) of the Bankruptcy Code, it can still enjoin the Defendant under Bankruptcy

Rule 7065.  Bankruptcy Rule 7065 provides that Rule 65 of the Federal Rules of Civil Procedure

shall apply in adversary proceedings, "except that a temporary restraining order or preliminary

injunction may be issued on application of a…trustee…without compliance with Rule 65(c)."

37.     The standard for issuing a temporary restraining order is the same as the one for

issuing a preliminary injunction.  *Parker v. State Bd. Of Pardons and Paroles*, 275 F.3d 1032,

1034-35 (11 Cir. 2001). For the last 50 years, the Second Circuit has required a party seeking a

preliminary injunction to show "(a) irreparable harm and (b) either (1) likelihood of success on

the merits or (2) sufficiently serious questions going to the merits to make them fair ground for

litigation and a balance of hardships tipping decidedly in favor towards the party requesting the

preliminary relief."  *Citigroup Global Markets, Inc. v. VCG Special Master Opportunities*

*Master Fund Ltd.*, 98 F.3d 30, 33 (2d Cir. 2010) ("The very purpose of an injunction…is to give

temporary relief based on a preliminary estimate of the strengths of plaintiff's suit, prior to the

resolution at trial of the factual disputes and the difficulties presented by the case.").

> Where the moving party seeks to stay government action taken in
> the public interest pursuant to a statutory or regulatory scheme, the
> district court should not apply the less rigorous ["serious
> questions"] standard and should not grant the injunction unless the
> moving party establishes, along with irreparable injury, a
> likelihood that he will succeed on the merits of the claim.

*Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995).  Applying the "likelihood of success on

the merits" test with mathematical precision is misplaced.  *Citigroup Global Markets, Inc.*, 598

F.3d at 36.  ("The value of this circuit's approach to assessing the merits of a claim at the

preliminary injunction stage lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation.").

38.     Here, even assuming that the DOL is pursuing the DOL Action in the public's interest – a fact which the Trustee does not concede – this Court should grant the Trustee a temporary restraining order and a preliminary injunction because the Estates will be irreparably harmed if the DOL proceeds with the DOL Action and it is likely that the Trustee will succeed on the merits. Because the DOL can still pursue its claims in the claims objection process, on balance, the DOL is not prejudiced by the issuance of the temporary restraining order.

**A.  The Estates will be irreparably harmed if the DOL proceeds with the Administrative Action.**

39.     The moving party must first demonstrate that irreparable injury is likely "before the other requirements for the issuance of an injunction will be considered." S*ee Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) ("To establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'").  An irreparable harm is one that cannot be remedied through a monetary award. *See Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 82 (2d Cir.1994) (no irreparable injury where plaintiff "could be adequately compensated with money damages if it were to prevail on these claims at trial"). Accordingly, when a party has alternate, monetary remedies for harm suffered, such harm is not irreparable. *See Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991) ("[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary remedy of a preliminary injunction should be granted.").  An alternate monetary remedy, however, must be actually and not theoretically available to a plaintiff to undermine a harm's irreparability. *See Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 912 (S.D.N.Y. 1986) ("Where a plaintiff's injury is

12

theoretically compensable in money damages, but as a practical matter, the defendant would not or could not respond fully for those damages, preliminary injunctive relief has been deemed necessary to protect plaintiff from irreparable injury.");

40.     Here, the Estates will be irreparably harmed if it is forced to litigate the same issues in different forums. Litigation on multiple fronts will deplete the assets of the Estate by the unnecessary incurrence of legal fees and expenses in litigating the duplicative claims asserted in the Administrative Action. Further the litigation in multiple forums can result in conflicting judgments on the same claim. For example, the administrative law judge could find the Debtors' Affirmative Defenses are without merit while this Court may conclude that at least one or more of the Affirmative Defenses has merit and find that the WARN Act claims are liquidated at zero. It is precisely these types of conflicting judgments that must be avoided.  There is no adequate monetary award available because the Trustee does not have a remedy against any party with respect to the depletion of its assets in defending the claims in multiple forums.

41.     Thus, the Trustee will suffer the irreparable injury if the DOL is permitted to pursue the Administrative Action.

**B.   It is likely that the Trustee will succeed on the merits.**

42.     It is likely that the Trustee will succeed on the merits because the automatic stay pursuant to section 362 of the Bankruptcy Code stays the Administrative Action.  11 U.S.C. §362(a)(1) provides in pertinent part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title…operates as a stay, applicable to all entities of –
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the

debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

43.     On the Petition Date, pursuant to § 362 of the Bankruptcy Code, the automatic stay became effective, staying any and all acts, actions and activities aimed at the collection of any debt owed by the Debtor and the exercise of any control over property of the Debtors' bankruptcy estate.

44.     Subsequent to the commencement of the Debtors' cases, the DOL was notified of the commencement of this case and of the automatic stay in place pursuant to § 362 of the Bankruptcy Code.

45.     On June 5, 2009, the DOL filed two proofs of claim each in the amount of $5,308,801.50, which incorporate a recovery for pre-petition wage arrears. In filing this claim, the DOL has conceded that there is a pre-petition claim. See DOL's proof of claim attached hereto as Exhibit B.

46.     Notwithstanding the notice to Defendant of the automatic stay and its submission to this Court's jurisdiction in the claims adjudication process, Defendant commenced the Administrative Action and intends to proceed with the administrative hearing.

47.     In accordance with Rule 7001(9) of the Federal Rules of Bankruptcy Procedure, it is likely that the Trustee will succeed and obtain a declaratory judgment that the DOL's attempt to proceed with the Administrative Action is a violation of the automatic stay.

**WARN Act Claims are Pre-Petition Claims**

48.     It is unhelpful for the DOL to argue that the automatic stay is inapplicable because the WARN Act claims are post-petition administrative expense claims. *Compare Mondragon v. Circuit City Stores, Inc.* (*In re Circuit City Stores, Inc.*) 2010 Bankr. LEXIS 547,

at *11 (Bankr. E.D. Va. 2010)(WARN Act claim arises when the employer should have given notice of the layoffs) *with In re Powermate Holding Corp.*, 394 B.R. 765, 776 (Bankr. Del. 2008) ("[T]he rights of workers discharged in violation of the WARN Act accrue in their entirety upon termination.).

49.     In Circuit City, the Bankruptcy Court adopted the conduct test to determine when a claim arises. *In re Circuit City Stores, Inc.*, 2010 Bankr. LEXIS at *8-9 (The "conduct test" holds that a claim arises when the event or conduct giving rise to the claim first occurs."); *see also Piper Aircraft Corp. v. Calabro* (*In re Piper Aircraft*) 169 B.R. 766, 774 (Bankr. S.D. Fla. 1994)( Debtor's pre-petition conduct established pre-petition claim although claimant was injured post-petition). The *Circuit City* court looked backwards to see when the WARN notice should have been given and concluded that is when the claim arose – in that case pre-petition. Here as in *Circuit City*, the majority of the employees were terminated on February 13, 2009. The NY WARN Act notices would have been required to be delivered on November 13, 2008; the Petition Date is February 5, 2009. Also, notice of the termination was distributed pre-petition. Thus applying *Circuit City* to our facts this Court must conclude that the WARN Act claims arose pre-petition.[1]

---

[1] Alternatively, this Court can reject the *Circuit City* and *Powermate* bright line tests. A precise application of sections 503(b) and 507(a) requires that the WARN Act claims should be bifurcated into (1) an administrative claim for the post-petition back pay claim, and (2) a priority and general unsecured claim for the pre-petition back pay claim. Any other conclusion would effectively be an end run around these sections. Section 503(b) provides for an administrative priority claim for the actual and necessary costs and expenses of preserving the estate including wages and salaries rendered after the commencement of the case. Section 507(a)(4) provides a priority claim for wages earned up to 180 days before the petition date up to $10,950 with the excess being a general unsecured claim. The Notice period straddles the Petition Date. Thus, the Trustee submits that the claimants should be entitled to a back pay claim that is both an administrative priority (essentially eight days from the Petition Date through the notice date) and a pre-petition priority and general unsecured claim for the remaining back pay claim.

**The Administrative Action is Not a Valid Exercise of the DOL's Police and Regulatory Powers.**

50.     Similarly, the DOL cannot successfully argue that the Administrative Action is a valid exercise of police and regulatory powers exempt from the automatic stay under 11 U.S.C. § 362(b)(4).  The police power exception to the automatic stay provides in part:

> The filing of a petition under sections 301, 302 or 303 of this title…does not operate as a stay …of the commencement or continuation of an action or proceeding by a governmental unit…to enforce such governmental unit's or organization's police and regulatory power, including enforcement of a judgment other than a monetary judgment, obtained in an action or proceeding by the governmental unit

51.     In applying the police powers exemption, courts have developed two tests: the "pecuniary interest" test or the "public policy" test.  *In re Pollack*, 401 B.R. 534, 536 (Bankr. N.D.N.Y 2009) ("In order for the police powers exception to apply, an action must satisfy one of these tests.").  This court has applied the "pecuniary purpose" test. The court looks to whether a governmental proceeding "relates to public safety and welfare –which favors application of the stay exception – or to the government's interest in the debtor's estate – which does not."  *Id.* (citing *Fullington v. Parkway Hosp*, 351 B.R. 280, 283 (E.D.N.Y. 2006); see also, *In re Enron Corp.*, 314 B.R. 524, 535 (Bankr. S.D.N.Y. 2004) (the police power exception is inapplicable where the action is seeking to enforce the government's pecuniary interest in the debtor's property or to adjudicate private rights.)

52.     In *Enron*, this court concluded that the California Attorney General ("AG") was barred from pursuing consumer protection claims against the debtor outside of the bankruptcy process because of the absence of any deterrent effect that would have turned the AG's action from being merely a pecuniary one to one effectuating public policy. *In re Enron Corp.*, 314

B.R. at 535 ("When the primary purpose of a government lawsuit is to seek money damages or other monetary relief for past conduct, and not to prevent future conduct that could harm the public health or safety, the courts hold that the police power exception to the automatic stay does not apply."). The AG's action came on top of a Federal Energy Regulatory Commission proceeding against the debtor and the action related to proofs of claim that were already filed. *Id.* Thus the court concluded that there was no additional deterrent effect that would be promoted by allowing the AG's action to go forward and the police power exception was inapplicable.

53.     Here, as in *Enron*, the DOL does not satisfy the pecuniary purpose test. The DOL is solely looking to evaluate and liquidate its claims against the Estates. This proceeding is duplicative of the purported Class Action proceeding and the claims adjudication process. Thus, the DOL cannot satisfy the pecuniary purposes test and the police powers exemption is inapplicable.

54.     Also, the police powers exemption is inapplicable because the DOL is seeking to litigate private rights. In *Enron*, this court found that the AG was forum shopping and seeking to litigate private rights because the action was for monetary damages. "Because restitution is the primary aim of the California Litigation, the Attorney General is merely acting as a creditor or an entity in a private class action." *Id.* at 540. Here, the DOL is seeking only monetary relief. It has filed proofs of claim in the bankruptcy case. There is already a purported class action pending that is seeking to enforce identical claims brought under the WARN Act and the NY WARN Act as well as approximately 1,100 proofs of claim filed by or on behalf of former employees – most of which are seeking the same relief. As in *Enron*, because the DOL is seeking to liquidate its

monetary claims against the Estate it is acting to enforce private rights and the section 364(b)(4) exception is inapplicable.

**C. <u>The balance of hardships tipping decidedly in favor of the Trustee.</u>**

55.     Here, the Court should issue temporary restraining order because the balance of hardships tips decidedly in favor of the Trustee. The DOL is not prejudiced by the imposition of a preliminary injunction or temporary restraining order because it still has a full and fair opportunity to pursue their claims in the claims adjudication process. On the other hand, as discussed above, the Trustee and the Estates would be severely prejudiced if required to  litigate the same claims in different forums.  Any damages recovered, if any, in the Administrative Action would eventually be distributed to the effected former employees, who have already filed proofs of claim and whose rights are being protected in the purported Class Action.

56.     Here, the DOL has submitted two proofs of claims each in the amount of $5,308,801.50, one claiming administrative priority under Bankruptcy Code §503(b)(1) and the other claiming a pre-petition priority claim under Bankruptcy Code §507(a)(8)(G).

57.     By the filing of their claims, the DOL has submitted to this Court's jurisdiction. *See Buena Vista Television v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 307 B.R. 404, 419 (Bankr. S.D.N.Y. 2004) (when creditors file a proof of claim in the bankruptcy court, they submitted to the equitable jurisdiction of the court.) (citing *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 58-59 (1989) and *Langenkamp v. Culp*, 498 U.S. 42 (1990)).

58.     Notwithstanding its submission to this Court's jurisdiction, the DOL commenced the Administrative Action. This Court should reject the DOL's efforts to forum shop their claims.

59.     On balance, this Court should prohibit the DOL from proceeding with its Administrative Action because the DOL is not prejudiced by the imposition of an injunction. The DOL can still pursue all of its claims in the claims adjudication process. On the other hand, the Trustee and the Estates would be prejudiced if required to litigate the DOL's claims in both the Administrative Action as well as the claims adjudication process and potentially the Class Action. Notwithstanding the Administrative Action, there are still approximately 1,100 claims that have been filed with respect to the federal and State WARN Acts; many of these claims are duplicative. These claims all need to be resolved and adjudicated even if the Administrative Action goes forward. This court should not require the Estates to litigate the same issues in different forums. This will deplete the assets of the Estates and reduce any recovery available to creditors.

60.     Thus the balance of hardships tips decidedly in favor of the Trustee because the DOL can still pursue its claims in the claims adjudication process.

## V. NOTICE

61.     Contemporaneously with the filing of this Application, the Trustee has served a copy of the Order to show Cause and the Application by overnight courier upon counsel for the DOL and the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn: Nazar Khodorovsky, Esq.  Given the exigencies of these cases, and the Trustee's need to prevent litigating the same issue on multiple fronts, the Trustee submits that it is necessary and appropriate to authorize the Trustee to move by order to show cause.

62.     The Trustee requests that this Court find that due and sufficient notice of this Application has been given to all interested parties.

WHEREFORE, the Plaintiff respectfully requests all of the relief sought in the within

Application and Order to Show Cause, together with such other and further relief as is just,

proper and equitable under the circumstances.


Dated: New York, New York         GAZES LLC
       June 29, 2010

                                       By:           /s/ Ian J. Gazes
                                             Ian J. Gazes

                                       32 Avenue of the Americas, 27th Floor
                                       New York, New York 10013
                                       (212) 765-9000
                                       *Attorneys for the Trustee*