UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

FORTUNOFF HOLDINGS, LLC and FORTUNOFF
CARD COMPANY, LLC,

Debtors.

Chapter 7
Case No. 09-10497 (RDD)
Jointly Administered

---
---

IAN J. GAZES, as Chapter 7 Trustee of the Estates of
Fortunoff Holding, LLC and Fortunoff Card Company,
LLC,

Plaintiff,

-against-

NEW YORK STATE DEPARTMENT OF LABOR,

Defendant.

Adversary Proceeding
No. 10-3339 (RDD)

---

## DEFENDANT'S ADDITIONAL MEMORANDUM OF LAW
## IN SUPPORT OF CROSS-MOTION TO DISMISS COMPLAINT

ANDREW M. CUOMO
ATTORNEY GENERAL OF THE
  STATE OF NEW YORK
By:

PATRICIA KAKALEC
Chief of Labor Bureau

SETH KUPFERBERG
Chief of General Labor Section

SETH KUPFERBERG
Assistant Attorney General
120 Broadway
New York, NY 10271
(212) 416-8856
Attorney for Respondents

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......................................................................................................1

ARGUMENT ................................................................................................................................2

I. THE FIRST FILED RULE DOES NOT APPLY .....................................................................2

II THE NEW YORK ACT ALLOWS TWO SIMULTANEOUS PROCEEDINGS .....................3

III MANY LAWS ALLOW AGENCY ENFORCEMENT EVEN IF PRIVATE LITIGATION
WAS FILED FIRST ....................................................................................................................6

      A. FLSA, the Equal Pay Act and the ADEA ....................................................................7

      B. New York Minimum Wage Act .................................................................................10

      C. Federal and New York Antitrust Law .......................................................................11

      D. Securities Law ...........................................................................................................13

      E. Clean Water Act ........................................................................................................15

      F. Secondary Boycott and Related Prohibitions of Federal Labor Law ..........................16

IV. WHETHER UNDER BANKRUPTCY OR NON-BANKRUPTCY LAW, AN INJUNCTION
MUST BE DENIED AND THE COMPLAINT DISMISSED......................................................17

CONCLUSION..........................................................................................................................18

## TABLE OF CASES

Page

*Aaron v. SEC*, 446 U.S. 680 (1980) ............................................................14

*Adelphia Communications Corp. v. The America Channel, LLC (In re Adelphia Communications Corp.)*, 345 B.R. 69 (S.D.N.Y. 2006) ......................................................12

*Alix v. Wal-Mart Stores, Inc..*, 57 A.D.3d 1044 (3d Dep't 2008)..........................................17-18

*Ballard v. Community Home Care Referral Serv., Inc.*, 264 A.D.2d 747 (2d Dep't 1999) .........10

*Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986 (11th Cir. 2008) ..15, 16

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) ...........................................8

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ...........................................6

*Carl Wagner & Sons v. Appendagez, Inc.*, 485 F.Supp. 762 (S.D.N.Y. 1980) ...........................13

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) ...................................2

*Columbia Gas of New York, Inc. v. N.Y. State Electric & Gas Corp.*,
28 N.Y.2d 117 (1971) ...........................................13

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ...............................4-5

*EEOC v. G-K-G, Inc.*, 39 F.3d 740 (7th Cir. 1994)............................................9-10, 11

*EEOC v. Wackenhut Corp.*, 939 F.2d 241 (5th Cir. 1991) ........................................9, 11

*Exxon Shipping Co. v. Baker.*, 128 S.Ct. 2605 (2008) ...............................15

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) ..............................2, 3

*FTC v. Cement Institute*, 333 U.S. 683 (1948) .......................................5, 12

*FTC v. Jantzen, Inc.*, 386 U.S. 228 (1967) ...........................................5, 12

*FTC v. Klesner*, 280 U.S. 19 (1929) ...........................................12

*In re Fiber Optek Interconnect Corp.*,
2009 WL 3074605 (Bankr. S.D.N.Y., Sept. 23, 2009) ...............................1

*First Nat'l Bank v. Reed*, 306 F.2d 481 (2d Cir. 1962) ...................................6

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987) ............................................................7, 9

*Gae Farms, Inc. v. Diamond*, 40 A.D.2d 909 (3d Dep't 1972) ......................................................16

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987) ..............15

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989) ....................................................................15

*In re Jerome Pollock Jr. Stone Artist, Inc.*, 402 B.R. 534 (Bankr. N.D.N.Y. 2009) ....................11

*Lockett v. EPA*, 319 F.3d 678 (5th Cir. 2003) .............................................................................16

*McComb v. Frank Scerbo & Sons*, 177 F.2d 137 (2d Cir. 1949).................................................8-9

*Marcus v. Frome.*, 329 F.Supp.2d 464 (S.D.N.Y. 2004) ...............................................................15

*Nat'l Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43 (2d Cir. 1961) .........................................1, 2

*NLRB v. Deena Artware, Inc.*, 198 F.2d 645 (6th Cir. 1952) .....................................................17

*Nat'l Student Marketing Litig.*, 368 F.Supp. 1311 (Jud. Pan. Mult. Lit. 1973) ............... 14, 14-15

*North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552 (1st Cir. 1991) 16

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986).....................6

*Old Dutch Farms, Inc. v. Milk Drivers Local 584*, 359 F.2d 598 (2d Cir. 1966)..........................17

*Pennsylvania v. Williams*, 294 U.S. 176 (1935) ............................................................................6

*In re Protected Vehicles, Inc.*, 392 B.R. 633 (Bankr. S.C. 2008) ...............................................5-6

*Publicker Indus., inc. v. United States (In re Cuyahoga Equipment Corp.)*,
980 F.2d 110 (2d Cir. 1992) ......................................................................................................2-3

*Rakozy v. Diversified Turnkey Constr. Co. (In re Western States Drywall)*,
150 B.R. 774 (Bankr. Idaho 1993)..............................................................................................18

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) .................................................................6

*SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000) .......................................................................... 13-14

*SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*,
530 F.Supp.2d 192 (D.D.C. 2008) ..............................................................................................14

*SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975) ................................................14

*Spancrete Northeast, Inc. v. Ironworkers*, 514 F.Supp. 326 (N.D.N.Y.), *aff'd*,
679 F.2d 874 (2d Cir. 1981)............................................................................................................17

*Thompson v. Magnoleum Petroleum Co.*, 309 U.S. 478 (1940) ......................................................6

*United Brick & Clay Workers v. Deena Artware, Inc.*, 198 F.2d 637 (6th Cir. 1952) ...................17

*United States v. Borden Co.*, 347 U.S. 514 (1954) ................................................................... 12-13

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1952)...................................................................12

*U.S. Alkali Export Ass'n v. United States*, 325 U.S. 196 (1945) ....................................................12

*William Gluckin & Co. v. Internat'l Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969) ..........................2

*Wirtz v. Robert E. Bob Adair, Inc.*, 224 F.Supp. 750 (W.D. Ark. 1963) .........................................8

*Younger v. Harris*, 319 U.S. 315 (1943) .........................................................................................2

The Defendant New York State Department of Labor ("DOL") submits this Additional Memorandum of Law pursuant to the Court's direction.

## PRELIMINARY STATEMENT

The DOL's previously filed Memorandum and Reply Memorandum of Law (Docket ## 17, "Main Brief," and 22, "Reply Brief") show that Bankruptcy Code § 362(b)(4) authorizes its administrative proceeding to enforce the New York State Worker Adjustment and Retraining Notification Act ("New York WARN Act" or "New York Act"), *see* Main Brief at 18-23 and Reply Brief at 2-10,[1] and that neither Code § 105 nor Bankruptcy Rule 7065 authorizes an injunction against the proceeding, *see* Main Brief at 37-39 and Reply Brief at 12-27. The Court requested further briefing on an additional question: does the New York Act permit two concurrent proceedings, one in court and the other before the New York Commissioner of Labor ("Commissioner"), or can a court where a complaint is filed before the DOL initiates a proceeding enjoin the latter apart from any possible bankruptcy-law authority?

The Court referred to the "first-filed" rule, which states that if a case in federal district court "embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case." *Nat'l Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961). As shown in Point I below, the rule, which involves successive cases in different federal courts and does not address administrative proceedings at all, is not a basis to enjoin the DOL proceeding. Whether the New York Act authorizes that proceeding and private litigation to coexist in the same case is a question of New York law and legislative intent; as shown in Point II, the answer is yes. Point

---

[1] *In re Fiber Optek Interconnect Corp.*, 2009 WL 3074605 (Bankr. S.D.N.Y. 2009), one of the holdings cited, has just been affirmed. Exhibit A to Declaration filed herewith.

1

III shows that this is not an unusual legislative choice. Many, diverse statutory schemes provide for both agency enforcement action and private litigation and share two features that the Legislature reasonably also adopted in the New York WARN Act: (1) the agency is not prevented from acting even if private litigants file first, and (2) the agency's public and the litigants' private interests are recognized as essentially different, even if overlapping. Point IV sums up: whether under bankruptcy or non-bankruptcy law, the injunction sought by the Trustee and by the plaintiffs in Adversary Proceeding # 09-01044 ("Iannacone Plaintiffs") must be denied, and his complaint seeking the injunction dismissed.

## ARGUMENT

### POINT I

### THE FIRST FILED RULE DOES NOT APPLY

The first filed rule applies when successive cases filed in different federal district courts are "essentially the same lawsuit." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). In those circumstances, the first court may enjoin prosecution of the second-filed case, but is to use its "sound discretion" since special circumstances may make the second court the appropriate forum. *William Gluckin & Co. v. Internat'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *City of New York v. Exxon Corp.*, 112 B.R. 540, 555 (S.D.N.Y. 1990); *cf. Nat'l Equipment Rental*, 287 F.2d at 47-8 (Lumbard, J., concurring and dissenting). The focus is picking between two federal courts where jurisdiction and venue are proper when essentially the same case was filed in both; the rule creates a rebuttable presumption in favor of the first-filed action, a matter of "venue dispositions" when "consolidating related disputes" from two districts to one. *See Publicker Indus., Inc. v. United States (In re Cuyahoga Equipment Corp.)*, 980 F.2d

110, 116-117 (2d Cir. 1992); *cf. Factors Etc.*, 579 F.2d 215 (both cases ultimately denied venue transfer, based on factors that overrode the presumption).

The rule has nothing to do with enjoining agency administrative proceedings. In that context, the issue is not choosing between two federal-court venues when consolidating what is essentially one action but whether a fundamentally different form of enforcement is to go forward at all. The first-filed rule applies when two cases are "essentially the same lawsuit," *Factors Etc.,* 579 F.2d at 218; an administrative proceeding is not a lawsuit. Nor are DOL enforcement and private litigation, even if both raise similar issues and can lead to payment to the same workers, "essentially the same." Agency enforcement of a statute in the public interest is different from a private lawsuit to recover a liability: the same reason Code § 362(b)(4) exempts agency action from the bankruptcy stay.

To enjoin an enforcement method authorized by a statute is not a matter of venue selection, the first-filed rule's topic, but of ignoring legislative intent. The decisive question is thus not whether the Iannacone Plaintiffs' adversary proceeding or the DOL administrative proceeding was filed first, or even which of the two the Court thinks would be a better way to resolve the issues, but whether the Legislature authorized the DOL to conduct an administrative proceeding notwithstanding the earlier filing of a private action. The answer is yes.

## POINT II

### THE NEW YORK ACT ALLOWS TWO SIMULTANEOUS PROCEEDINGS

As discussed in our Main Brief at 11-12, whereas the federal Worker Adjustment and Retraining Notification Act ("Federal WARN Act" or "Federal Act") can be enforced only through private litigation, New York Labor Law § 860-f(6) empowers the Commissioner to "determine that an employer has violated any of the requirements of this article" through "an

3

administrative hearing," subject to review in the Appellate Division of New York Supreme Court. Under § 860-f(6) and (7), her order is to include "the amount found to be due" and she is to distribute "any back pay and the value of any benefits recovered" to employees. At the same time, § 860-g(7) permits "[a]n aggrieved employee, local government, or an employee representative seeking to establish liability against an employer" to "bring a civil action on behalf of the person, others similarly situated, or both, in any court of competent jurisdiction."

Labor Law § 860-g makes clear that both mechanisms may be used at the same time and in the same case, by stating in § 860-g(1) that violators are liable for back pay and benefits and in § 860-g(4) that the amount of such liability shall be reduced by:

> (e) In an administrative proceeding by the commissioner, any liability paid by the employer prior to the commissioner's determination as the result of a private action brought under this article.

> (f) In a private action brought under this article, any liability paid by the employer in an administrative proceeding by the commissioner prior to the adjudication of such private action.

If the Legislature had not meant to allow concurrent proceedings, this would not make sense.

If the court where a private action was filed could enjoin the DOL, there would be no reason to direct the Commissioner to reduce her determination by liability paid as the result of the private action, nor to direct the court to reduce its adjudication by liability paid in the DOL proceeding. The Legislature only foreclosed double recovery; it was not bothered by concurrent proceedings. As illustrated by the schemes discussed in Point III, such a legislative choice is not unusual. Nor does it create a situation comparable to the identical court cases addressed by the first-filed rule, because the public interest served by agency enforcement and workers' private interest, even if overlapping, are not the same.

The "cardinal canon" is that courts "must presume that a legislature says in a statute what

4

it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-4 (1992). "As Mr. Justice Holmes said many years ago: 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.'" *FTC v. Jantzen, Inc.*, 386 U.S. 228, 235 (1967). The only logical way to interpret § 860-g is to recognize that agency enforcement by the DOL is independent of a private action to recover a liability, regardless which one is filed first. In addition, legislative history further confirms that agency enforcement was a primary feature of the New York Act, recognized as such by both its supporters and its opponents.[2]

It might be objected that two proceedings create a possibility of conflicting findings. Not only could the same be said of other statutes discussed in Point III, but both the Commissioner's determination and the finding of a New York court in a private action can be appealed to the Appellate Division for resolution of any conflict that actually develops. That this solution is not available if a private § 860-g(7) action is filed in a federal court is simply an additional reason for it to abstain from adjudicating State-law issues which the Commissioner and Appellate Division can better decide, a course supported by long-standing precedent in equitable cases.[3]

---

[2] The bill jacket is Exhibit B to the Declaration filed herewith. For example, the Introducer's Memorandum states as the first enforcement mechanism, before employer liability or affected employees' cause of action: "provides the Commissioner of Labor with the authority to enforce Article 25-A." It adds that while the Federal WARN Act has no "government enforcement," authorizing action by the Commissioner "would provide an effective mechanism for enforcement. The bill would also give a state cause of action to employees...." The Division of the Budget Memorandum did not mention private actions, only that the bill "authorizes the Department of Labor (DOL) to require employers to pay..." The New York State Department of Economic Development and the Business Council opposed adding a new mechanism to that of the Federal Act ideas; Business Council also complained that "exceptions to the notice provision... will be subject to new, state-level interpretation."

[3] Federal WARN Act claims have been found equitable for reasons also applicable to New York Act claims. *See, e.g., In re Protected Vehicles, Inc.*, 392 B.R. 633, 636-9 (Bankr. S.C. 2008)

*See, e.g., Pennsylvania v. Williams*, 294 U.S. 176, 182-5 (1935) (requiring federal court to relinquish case to state banking department); *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943) (since Texas established procedure to adjudicate dispute, "a sound respect for the independence of state action requires the federal equity court to stay its hand"); *Younger v. Harris*, 401 U.S. 37, 53 (1971) (injunctions against state criminal prosecutions available only in "extraordinary circumstances"); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986) (*Younger* protects "administrative proceedings in which important state interests are vindicated"). *Cf. Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481-2 (1940); *First Nat'l Bank v. Reed*, 306 F.2d 481, 487-8 (2d Cir. 1962), and other authority cited in our Main Brief at 25-6 showing that bankruptcy courts defer to state tribunals as to unsettled State-law questions.

## POINT III

### MANY LAWS ALLOW AGENCY ENFORCEMENT
### EVEN IF PRIVATE LITIGATION WAS FILED FIRST

There is nothing unique or irrational about a law providing, like the New York WARN Act, that there can be both agency enforcement and private litigation in the same case. The otherwise diverse federal and New York schemes discussed below all do so. An agency is not enjoined because private litigation was filed first. On the contrary, case law recognizes the difference between agency enforcement in the public interest and private litigation, underscoring

---

(noting "discretionary authority… to reduce the award," *cf.* New York Labor Law § 860-g(6) and (7); similarity of back pay awards to those in Title VII actions, which are equitable; and precedent classing claims for lost benefits as for restitution and equitable). Even if the claim were somehow not treated as equitable, it would still make sense to stay a New York Act claim in a case like this one. While precedent does not support *dismissing* cases that do not involve equitable or discretionary relief, only damages, "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730-1 (1996).

6

that the first-filed rule which is applicable when substantially identical cases are filed in two federal courts is beside the point.

A law like the New York WARN Act requiring payment to workers if a plant closes is an example of "minimum substantive labor standards." *See* Reply Brief at 2-3, discussing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20-22 (1987). For this reason, wage laws like the federal Fair Labor Standards Act ("FLSA") and New York Minimum Wage Act requiring minimum wage levels and payment at "time and a half" for hours over 40 in a week are discussed first. FLSA's enforcement scheme is also incorporated in the Equal Pay Act and the Age Discrimination in Employment Act ("ADEA").

### A. FLSA, the Equal Pay Act and the ADEA

FLSA, 29 U.S.C. § 216(b), makes employers liable to workers for unpaid wages, liquidated damages and attorneys' fees, and authorizes actions to recover such liability

> in any Federal or State court of competent jurisdiction by any one or more employees for or on behalf of himself or themselves and any other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing.... The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217....

In addition, both § 216(c) and § 217 authorize the U.S. Secretary of Labor ("Secretary") to sue for unpaid wages, either as the main relief under § 216(c) or as an incident to equitable relief under § 217; under § 216(c) (which makes a jury trial available to the employer), the Secretary can also seek liquidated damages, but not attorney's fees. Whether the Secretary's suit is brought under § 216(c) or § 217, the § 216(b) right "to bring an action by or on behalf of any employee, and the right of any employee to become a party to become a party plaintiff to any such action," terminates upon filing of the Secretary's complaint, but an already-filed suit under

§ 216(b) can continue along with the Secretary's suit. *See* Conf. Rep. No. 87-327, 1961 U.S.C.C.A.N. 1706, 1714 (Secretary's filing "would not, however, operate to terminate any employee's right to maintain such a private suit to which he had become a party plaintiff before the Secretary's action").

This complex scheme has a history, outlined in *Wirtz v. Robert E. Bob Adair, Inc.*, 224 F.Supp. 750, 753-5 (W.D. Ark. 1963). For 11 years after FLSA's original enactment in 1938, courts disagreed about whether unpaid wages could be awarded when the Secretary sought an injunction under § 217. The Second Circuit said yes, rejecting an employer's argument that this might subject it "to a multiplicity of suits" since workers could also sue under § 216(b):

> We are not called upon to decide definitely the status of a possible suit by the employee after the Administrator has recovered... but.... the Administrator represents a public, the employee, a private interest. Properly to safeguard these two interests may well require the two remedies which are at most an inconvenience to the violating employer and not beyond the legislative power.

*McComb v. Frank Scerbo & Sons*, 177 F.2d 137, 139 (2d Cir. 1949).[4] Congress then amended FLSA to reverse *Frank Scerbo* and similar cases, authorizing the Secretary to seek unpaid wages as part of a § 217 case only upon employee request. In 1961, declaring this system a failure because of employee hesitance to come forward, Congress again amended FLSA to authorize the Secretary to seek back pay (but still not liquidated damages, *see Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063-4 (2d Cir. 1988)) under § 217, while also adding an amendment to § 216(b) barring new private litigation after the Secretary does so.

FLSA is not enforced through administrative proceedings, but it does resemble the New

---

[4] One judge on the three-judge panel disputed, and another withheld judgment on, the inference that workers could probably file a second suit after the Secretary obtained their wages in an equitable trial. *Id.* at 140 (L. Hand, J., concurring in result) and 141 (Frank, J., concurring). No one disputed that the agency "represents a public, the employee, a private interest."

York Act permitting both those and private litigation in that it permits litigation seeking back wages to be filed by *both* the Secretary, even in an equitable case, and by private litigants. If the private litigation was filed first, both go ahead; the Secretary's filing bars new private litigation.[5] Allowing both makes sense because despite the fact that similar relief is sought, the agency, as recognized in *Frank Scerbo*, "represents a public, the employee, a private interest." 177 F.2d at 139.

FLSA mechanisms apply under the Equal Pay Act, 29 U.S.C. § 206(d)(1), and are incorporated in the ADEA, 29 U.S.C. § 626(b). For the latter, the EEOC replaces the Secretary of Labor.[6] At least two precedents have applied the ADEA provision to hold expressly that a first-filed private action does not bar agency enforcement. As stated in *EEOC v. Wackenhut Corp.*, 939 F.2d 241, 242-3 (5th Cir. 1991), the statutes "specifically address the issue of overlapping or duplicative suits;" since Congress contemplated "government suits being filed independent of, and subsequent to, employee suits," a court must follow the "legislative intent to allow both."

*EEOC v. G-K-G, Inc.*, 39 F.3d 740, 743-5 (7th Cir. 1994), held that the EEOC "has an unequivocal statutory right" to enforce the ADEA even more forcefully, in that the Court deemed use of the right so ill-advised. Expressing "wonderment that the Commission should want to elbow its way into a case in which the employee who is complaining of age

---

[5] Congress apparently did not want to authorize what *Frank Scerbo* had implied might be possible: worker suits commenced after the Secretary obtained back wages in a § 217 action.

[6] The Maine severance pay law upheld in *Fort Halifax*, 26 M.R.S.A. § 625-B(5), *see* Reply Brief at 6 n. 5, also includes a modified version of FLSA § 216(b), stating that the right "to bring an action by or on behalf of any employee, and of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the director [of Maine's Bureau of Labor Standards] in an action under this subsection, unless the action is dismissed without prejudice by the director."

discrimination has brought his own suit," which he called "especially pointless," Judge Posner nevertheless concluded that the statute gives the EEOC "the whip hand… just as it asserts" (even if, according to the opinion, "[i]t is not clear *why* Congress gave the Commission the whip hand") (emphasis in original). The EEOC action in *G-K-G* went forward despite a first-filed private action because that was what the law allowed, not because the court liked the idea. *Cf.* Reply Brief at 25 (even if the Court thinks the DOL in the present case lacks a good reason to go forward, that is not a basis to enjoin its proceeding).

### B. New York Minimum Wage Act

Though substantively comparable to FLSA, the New York Minimum Wage Act has a different enforcement scheme. Under New York Labor Law § 663, either employees or the Commissioner "[o]n behalf of any employee" may sue the employer in a civil action for unpaid required wages and, if the underpayment was willful, an additional 25% as liquidated damages. Unlike FLSA, the Minimum Wage Act does not require that employees wishing to be plaintiffs affirmatively consent in writing; on the other hand liquidated damages, being a penalty, cannot be sought in a New York class action. *Ballard v. Community Home Care Referral Serv., Inc.*, 264 A.D.2d 747, 748 (2d Dep't 1999).

A more important difference is that besides litigation brought by employees or the Commissioner, the New York statute can also be enforced through a DOL administrative proceeding. Labor Law §§ 218(1) and 219(1) direct the Commissioner, if she finds that the Minimum Wage Act was violated, to "issue to the employer an order directing compliance," including "payment of wages… found to be due…. plus the appropriate civil penalty." These compliance orders can be appealed to the New York State Industrial Board of Appeals ("IBA"), *see* §§ 218(2) and 219(2); the IBA, for its part, conducts a *de novo* hearing and renders a decision

which may be appealed in an Article 78 proceeding like other agencies'. 12 N.Y.C.R.R. § 66.1; Labor Law § 102; *cf. In re Jerome Pollock Jr. Stone Artist, Inc.*, 402 B.R. 534 (Bankr. N.D.N.Y. 2009), discussed in Main Brief at 21 (holding that Bankruptcy Code § 362(b)(4) permits such a proceeding to go forward). Labor Law § 103(1) adds that "Except as otherwise provided in this chapter, no court shall have jurisdiction to review or annul any such... order or to restrain or interfere with its enforcement." If not appealed to the IBA, the DOL orders are enforceable as judgments. Labor Law §§ 218(2-3) and 219(2-3). A DOL order or IBA proceeding could no more be enjoined because employees earlier filed a private suit under Labor Law § 663 than *Wackenhut* or *G-K-G* enjoined the EEOC because employees earlier filed a private ADEA suit.

## C. Federal and New York Antitrust Law

15 U.S.C. §§ 4 and 9 make it "the duty of the several United States attorneys... under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain" violations of the antitrust laws. At the same time, 15 U.S.C. § 15(a) permits "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws [to] sue therefore in any district court of the United States;" injunctive relief is available to such plaintiffs under 15 U.S.C. § 26.[7] Finally, 15 U.S.C. § 21 authorizes the Federal Trade Commission ("FTC") to order cessation of some violations in an administrative proceeding. In

---

[7] 15 U.S.C. § 15c(a) authorizes State attorneys general to sue "as parens patriae on behalf of natural persons residing in such State... to secure monetary relief as provided in this section for injury sustained by such natural persons;" § 15c(b) permits a person to "elect to exclude from adjudication the portion of the State claim for monetary relief attributable to him;" § 15f states:

Whenever the Attorney General of the United States has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action under this Act based substantially on the same alleged violation of the antitrust laws, he shall promptly give written notification thereof to such State attorney general.

particular, the Clayton Act's §§ 1, 3, 7, and 8 "may be enforced either by cease and desist orders of the Commission... or by suits... under the direction of the Attorney General." *U.S. Alkali Export Ass'n v. United States*, 325 U.S. 196, 208 (1945); *cf. FTC v. Jantzen*, 386 U.S. at 230-1 (discussing amendments enacted in 1959 "to strengthen the hand of the Commission in the enforcement of the Clayton Act").

Like the Attorney General in antitrust litigation, and unlike a private antitrust plaintiff, the FTC acts in the public interest:

> The formal complaint is brought in the Commission's name; the prosecution is wholly that of the government; and it bears the entire expense of the prosecution. A person who deems himself aggrieved by the use of an unfair method of competition.... may of course bring the matter to the Commission's attention and request it to file a complaint. But a denial of his request is final. And if the request is granted and a proceeding is instituted, he does not become a party to it or have any control over it.

*FTC v. Klesner*, 280 U.S. 19, 25-6 (1929); *cf. Adelphia Communications Corp. v. The America Channel, LLC (In re Adelphia Communications Corp.)*, 345 B.R. 69, 78 (S.D.N.Y. 2006), discussed in Reply Brief at 14 and 24 nn. 12 and 22 (enjoining a private antitrust suit but noting that the result would "at least arguabl[y]" be different had "a *governmental* litigant," emphasis in original, brought the suit). All the mechanisms described above, public and private, administrative or in court, may be used in one case; that private litigation was filed first is not a basis to enjoin either government litigation or an FTC proceeding.

Rather, "the cases have spoken of Congress' design to provide a scheme of dual enforcement," permitting both FTC and court proceedings. *United States v. W.T. Grant Co*, 345 U.S. 629, 632 (1952). *U.S. Alkali Export Ass'n*, 325 U.S. at 209, explained that though the FTC and Attorney General "will seldom act simultaneously," Congress saw no "objection to the concurrent jurisdiction." *United States v. Borden Co.*, 347 U.S. 514 (1954), found it an abuse of

judicial discretion to refuse the U.S. Attorney General an antitrust injunction because the conduct at issue was already prohibited by a consent decree entered in private litigation (the court reversed had declared: "As a court of equity, I will not perform a useless task"); as explained in *Borden*, the "private and public actions were designed to be cumulative" and "'may proceed simultaneously... '.... [T]he Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit." *Id.* at 517-9 (citation omitted); *see also FTC v. Cement Institute*, 333 U.S. 683, 694-5 (1948) ("the Sherman Act and the Trade Commission Act provide the Government with cumulative remedies" and "permit the simultaneous use of both types of proceedings").

In addition to the federal antitrust laws, State antitrust statutes, notably New York's Donnelly Act, New York General Business Law §§ 340(5) and 342-343, also authorize both private antitrust litigation and agency enforcement: in the case of the Donnelly Act, through suits by the New York Attorney General. Again, the private and public mechanisms are independent. *See Columbia Gas of New York, Inc. v. N.Y. State Electric & Gas Corp.*, 28 N.Y.2d 117, 129 (1971) (notice to Attorney General not a condition precedent for private action); *Carl Wagner & Sons v. Appendagez, Inc.*, 485 F.Supp. 762, 773 (S.D.N.Y. 1980) (same).

### D. Securities Law

The Securities Exchange Act, 15 U.S.C. § 78u(d), gives the Securities Exchange Commission ("SEC") discretion to sue in federal court to enjoin, seek a civil penalty for, and request "any equitable relief that may be appropriate and necessary for the benefit of investors" on account of statutory violations. *Cf. SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000), discussed in Main Brief at 19-21 (holding that Bankruptcy Code § 362(b)(4) permits such an action to go forward). A court lacks jurisdiction to review the SEC's discretionary decision to institute and

maintain an action. *SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975). The SEC can also assess penalties, enter cease-and-desist orders and impose other remedies through administrative proceedings. 15 U.S.C. §§ 78u-2 and 78u-3.

Private litigation to recover a Securities Exchange Act liability is authorized, *see* 15 U.S.C. §§ 78t-1, and 78u-4 regulating class action litigation, but must not interfere with – much less form a basis to enjoin, under the first-filed rule or otherwise – litigation or administrative proceedings by the SEC. *See* § 78t-1(e) ("This section shall not be construed to bar or limit in any manner any action by the Commission or the Attorney General...."). Indeed, § 78u(g) even bars consolidation or coordination of SEC actions for equitable relief "with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission."

This § 78u(g) exemption, modeled on one for government antitrust suits codified at 28 U.S.C. § 1407(g), was enacted to reverse *In re Nat'l Student Marketing Litig.*, 368 F.Supp. 1311 (Jud. Pan. Mult. Lit. 1973), which while not denying the special role of (still less enjoining) SEC-filed litigation, had lumped it with private litigation for pretrial purposes. The current provision "addresses Congress' awareness that the purpose of SEC actions differs from that of private actions. That is, the SEC seeks law enforcement while '[p]rivate actions for damages seek to adjudicate a private controversy.'" *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 530 F.Supp.2d 192, 194-5 (D.D.C. 2008) (quoting S. Rep. 94-75, 1975 U.S.C.C.A.N. 179, 254); *cf. Aaron v. SEC*, 446 U.S. 680, 717-18 n. 9 (1980) (Blackmun, J., concurring and dissenting) (§ 78u(g) recognized "the different purposes of Commission enforcement proceedings and private actions"), *Nat'l Student Marketing Litig.*, 368 F.Supp. at 1319 (Weinfeld, J., dissenting) (SEC action has objective "different from those of the

14

private litigations"). The 1975 enactment underscores the distinct public interest in agency enforcement; even earlier, that a private action was filed first was not a basis to enjoin either litigation by the SEC or an administrative proceeding.[8]

### E. Clean Water Act

The Clean Water Act "established a system of... regulatory mechanisms to be administered by the federal EPA and the various states in order 'to restore and maintain... the Nation's waters.'" *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 988 (11th Cir. 2008). This is in addition to previous "duties to refrain from injuring the bodies and livelihoods of private individuals" which the Clean Water Act did not preempt or eliminate. *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2619 (2008).

33 U.S.C. § 1319(a)(3) and (b) direct the Administrator of the Environmental Protection Agency ("EPA"), if she finds violations of the Clean Water Act, to sue in federal court. Under 33 U.S.C. § 1365(a)(1) and (b), "any citizen" can also sue, but only if the citizen first notifies the EPA and the relevant State of the alleged violation, 60 days go by, and the Administrator or State has not commenced or is not diligently prosecuting an action in federal or State court. "The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60 (1987); *cf. Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989) (applying similar law) ("notice allows Government agencies to take responsibility for environmental regulations, thus obviating the need for citizen suits").

---

[8] New York's Martin Act, New York General Business Law §§ 352-i and 353, authorizes the New York Attorney General to sue for securities fraud under New York law, another type of law enforcement not enjoinable based on the prior filing of private litigation. Unlike the Securities Exchange Act, the Martin Act does not authorize private litigation, *see Marcus v. Frome*, 329 F.Supp.2d 464, 475-6 (S.D.N.Y. 2004).

33 U.S.C. § 1319(g) also authorizes the EPA, "after consultation with the State in which the violation occurs," to impose civil penalties for violations through an administrative proceeding, and states that such action under the Clean Water Act or action under "a State law comparable to this subsection" bars a § 1365 citizen suit except if the latter was filed, or the plaintiff gave notice of the violation, "prior to commencement of an action under this subsection." This barrier to new suits, § 1319(g)(6)(B), is applicable if a State government, not just the EPA, "is pursuing remedies through an administrative enforcement process." *Black Warrior Riverkeeper*, 548 F.3d at 990-992.[9] In New York, the New York State Department of Environmental Conservation ("DEC") has "administrative jurisdiction to abate and prevent the pollution of the waters of the state." New York Environmental Conservation Law § 17-0303(2) and (4); *cf. Gae Farms, Inc. v. Diamond*, 40 A.D.2d 909 (3d Dep't 1972) (enforcing DEC administrative order). The Clean Water Act, particularly § 1319(g)6)(B) barring new citizen suits after an administrative proceeding begins, makes clear that the administrative proceeding, whether before the DEC or the EPA, cannot be enjoined because either a citizen suit or private litigation that is not preempted was filed first.

### F. Secondary Boycott and Related Prohibitions of Federal Labor Law

Most provisions of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, are enforceable only through administrative proceedings before the National Labor Relations Board ("NLRB"). Prohibitions on secondary boycotts and certain other types of union self-help included in § 158(b)(4), part of the Taft-Hartley amendments to the NLRA enacted in 1947, are

---

[9] The Act recognizes "*the primary responsibility and rights of the States* to prevent, reduce and eliminate pollution." *North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 555 (1st Cir. 1991) (quoting and adding emphasis to 33 U.S.C. § 1251(b)); *cf. Lockett v. EPA*, 319 F.3d 678, 684 (5th Cir. 2003).

an exception; those prohibitions, like the New York WARN Act, can be enforced through the administrative proceeding and can also be the basis for private litigation to recover on a liability.

While the NLRB can adjudicate any charge under § 158, *see* 29 U.S.C. § 160(a), another Taft-Hartley provision, 29 U.S.C. § 187, authorizes anyone "injured in his business or property" by reason of a violation of § 158(b)(4) to sue for damages in any court with jurisdiction. "The administrative and judicial remedies are viewed as entirely independent." *Old Dutch Farms, Inc. v. Milk Drivers Local 584*, 359 F.2d 598, 603 n. 7 (2d Cir. 1966).[10] Employers "may pursue both remedies at the same time or in sequence." *Spancrete Northeast, Inc. v. Ironworkers*, 514 F.Supp. 326, 329-30 (N.D.N.Y.), *aff'd*, 679 F.2d 874 (2d Cir. 1981). Accordingly, a court in which a suit under 29 U.S.C. § 187 was filed first could not for that reason enjoin a parallel administrative proceeding before the NLRB concerning a § 158(b)(4) charge.

## POINT IV

### WHETHER UNDER BANKRUPTCY OR NON-BANKRUPTCY LAW, AN INJUNCTION MUST BE DENIED AND THE COMPLAINT DISMISSED

As shown in Point II, the New York WARN Act contemplates parallel administrative enforcement and private actions. As shown in Point III, the same is true of many statutory schemes that recognize a difference between the public interest served by agency enforcement and private rights: substantially the same difference recognized by Bankruptcy Code § 362(b)(4).

That the DOL proceeding and the Iannacone Plaintiffs' private action are not identical does not mean that the former will not protect the workers the Iannacone Plaintiffs seek to represent. *Cf. Alix v. Wal-Mart Stores, Inc.*, 57 A.D.3d 1044, 1048 (3d Dep't 2008) (noting

---

[10] Indeed, inconsistent findings have been found supported by evidence and therefore both upheld. *See United Brick & Clay Workers v. Deena Artware, Inc.*, 198 F.2d 637, 642-3 (6th Cir. 1952) and *NLRB v. Deena Artware, Inc.*, 198 F.2d 645, 653 (6th Cir. 1952).

administrative remedy for Minimum Wage Act violations through DOL compliance orders and IBA proceeding, and that "Simply because the Commissioner of Labor's authority to pursue such claims is discretionary... does not render such a proceeding less effective than a class action"). To the extent a DOL proceeding and adjudication of the Iannacone Plaintiffs' New York Act claim might yield similar results, the workers are better off with the former, which as a practical matter does not make them pay attorneys' fees out of any recovery, and which poses no problem of class certification, *see* Main Brief at 15-16. To the extent results might differ, the New York Act requires that the DOL proceeding be allowed, and a State tribunal is the better forum to construe a new State law. If the Court wants to avoid multiple forums, the right approach is not to enjoin the DOL proceeding but to stay the Iannacone proceeding as in *Rakozy v. Diversified Turnkey Constr. Co. (In re Western States Drywall)*, 150 B.R. 774 (Bankr. Idaho 1993), where a U.S. Department of Labor proceeding went forward. *See* Reply Brief at 26.

## CONCLUSION

For these reasons as well as those in our earlier Briefs, the injunction sought by the Trustee must be denied and the Complaint dismissed.

Dated: October 15, 20

PATRICIA KAKALEC
Chief of Labor Bureau

SETH KUPFERBERG
Chief of General Labor Section

Respectfully submitted,

ANDREW M. CUOMO
ATTORNEY GENERAL OF NEW YORK
120 Broadway
New York, New York 10271
(212) 416-8856

By: _____
SETH KUPFERBERG (SK-4511)
Assistant Attorney General

18