UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------X
In Re:                                  :  09-10497 (RDD)
                                        :
        FORTUNOFF HOLDINGS, LLC,        :
                                        :  White Plains, NY
                    Debtor.             :  September 15, 2010
---------------------------------------X
GAZES, et al.,                          :  10-03339-(RDD)
                                        :
                    Plaintiff,          :
                                        :
                    v.                  :
                                        :
NEW YORK STATE DEPARTMENT OF LABOR,     :
                                        :
                    Defendant.          :
---------------------------------------X
```

        TRANSCRIPT OF (Doc.2) MOTION FOR PRELIMINARY INJUCTION
MEMORANDUM OF LAW, (Doc.15) MOTION TO DISMISS ADVERSARY
PROCEEDINGS, (Doc.16) MOTION TO FILE CORRECTED BRIEF, (Doc.19)
RESPONSE TO OPPOSITION TO MOTION FOR A PRELIMINARY INJUCTION
AND OPPOSITION TO CROSS-MOTION TO DISMISS COMPLAINT HEARD
                BEFORE THE HONORABLE ROBERT D. DRAIN
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


For the Trustee:          IAN J. GAZES, ESQ.
                          Gazes LLC
                          32 avenue of the Americas
                          New York, New York  10013

For the Defendant:        New York Attorney General's Office
                          BY:  SETH KUPFERBERG, ESQ.
                          Assistant Attorney General

                  REGENCY REPORTING, INC.
              Certified Court Reporters & Videographers
          425 Eagle Rock Avenue        575 Madison Avenue
          Roseland, NJ 07068           New York, NY 10022
              www.regencyreporting.net   1-866-268-7866

1          THE COURT:  All right.  <u>Fortunoff</u>.

2                    (Pause in proceedings)

3                         (Recess)

4          THE COURT:  Okay.  We're back on the record in <u>In Re:</u>

5   <u>Fortunoff</u> and <u>Gazes v. New York DOL</u>.

6          MR. GAZES:  Good afternoon, Your Honor.  Ian Gazes of

7   Gazes LLC, counsel to the Trustee in connection with this

8   motion by the Trustee for an injunction staying the DOL

9   administrative hearing.  The DOL has asserted an opportunity to

10  appoint an administrator to hear and determine the Warren Act

11  [sic] claims and in addition to that as Your Honor is well

12  aware, there is a class action certification being sought by

13  the employees as well.  The parties to the class certification

14  are here and also as well there is this claim resolution

15  process.  So we have these three avenues of which the Trustee

16  is faced --

17         THE COURT:  And that's because the DOL has filed a

18  proof of claim in the case?

19         MR. GAZES:  That's right.

20         THE COURT:  Okay.

21         MR. GAZES:  The DOL has actually filed two proofs of

22  claim and one asserting administrative status for approximately

23  $5 million and one is a pre-petition priority claim for

24  approximately $5 million.

25              We've looked at all the claims just to give you a

1    little bit of background and we've actually cleansed all the

2    data.  We've exchanged all this data with regard to the wages;

3    who the employees are, who would be qualified, who would not be

4    qualified from the various, I believe, there are five

5    locations.  We've shared that with both parties in an effort to

6    at least arrive at what we think might be the number.  The DOL

7    has one number which we agree with to some extent and the class

8    certification defendants -- plaintiffs have a different number.

9    We initially initiated negotiations with the DOL to see if we

10    can resolve this issue of which I don't want to discuss on the

11    record, although Mr. Golden -- his declaration appears to have

12    revealed some of that -- and in addition we've reached out to

13    the employees who are being represented by the class

14    certification process to see what numbers we can come to with

15    them in an overall basis as you know I would try to do to reach

16    a global resolution to try and put all these things aside

17    because we're burning money at an exceeding [sic] rate,

18    gathering all of this, trying to negotiate all this and it's

19    been a particularly difficult and cumbersome task because there

20    are more than 50,000 e-mails on a server that was put down and

21    sold so we had to extract all of this data in order to even

22    determine the validity of our defenses which, we believe, are

23    quite strong to the Warren Act claims, both the federal and

24    state.

25            So we initially had to comply with the document

1    subpoena by the DOL, the class action plaintiffs have been kind

2    enough to sit back to a great extent to as we've discussed to

3    allow the process to unfold to see (1) how much money we'll

4    ultimately come out with and see, you know, what we can resolve

5    this for in a future date.  So that's been put off for quite

6    some time as well.

7         I had requested extensions on the subpoena because

8    needed to get all the information over to the DOL and in fact

9    we gave them cleansed data, although not revealed in Mr.

10   Golden's declaration.  If it were not for the data we gave them

11   they would never have been able to arrive at a number even to

12   know what it is that they're seeking here.

13        Our accountants -- the Trustee's accountants --

14   cleansed all that data, actually calculated it all out; who was

15   full-time, who was part-time, who was qualified, what locations

16   are relevant to the claim itself, all of which, of course, is

17   without prejudice to the Trustee's right to assert that there

18   is no claim at all subject to the defenses.

19        So we came upon now before Your Honor seeking a stay

20   of the administrative law hearing and in summary there are only

21   three bases of which we're seeking that stay; one would be the

22   Section 105 injunction, the other would be the bankruptcy Rule

23   7065 injunction and the third would be that the police power

24   under the 362 exception would not apply because we don't

25   believe this is an exercise of police power.

1          There is one other possibility here, Your Honor,

2     which I've been thinking about and reading about and that would

3     be the first filing rule since the class --

4          THE COURT:  I've been reading about that too.

5          MR. GAZES:  -- since the class certification has

6     filed an adversary proceeding some seven or nine months prior

7     to the DOL seeking the administrative law hearing, I might give

8     you, I suppose, another handle to hang a hat on if you were

9     inclined to support the Trustee's position to find that, well,

10    we only have a pending action and why allow another one to go

11    forward?  This is the first priority, the first filing and

12    let's proceed with that action.  Again, that's without

13    prejudice for the Trustee's position that there may not be an

14    permissible class certification here but that would always

15    leave, ultimately, a claims resolution process.  We do have

16    employees who have filed proofs of claim, albeit not all of

17    them, and so there always is three ways of which to deal with

18    the situation.  My goal, of course, is to do it in the most

19    efficient and cost effective manner and not to waste judicial

20    economy on matters that do not necessarily need to be before

21    you.

22         We believe the 105 injunction sought here is very

23    strong.  As you can tell from our papers, we believe that there

24    could be inconsistent judgments here, that the DOL is seeking

25    to assess a liability for all employees when not all employees

1   have filed proofs of claim.  I think there's about 100

2   employees who have not filed proofs of claim which has a

3   significant impact upon the overall the claim itself.  We

4   believe that there may be res judicata issues --

5           THE COURT:  I guess I didn't -- I see how that might

6   relate to timing issues but if the DOL has standing to assert

7   the claim and the ability under the statute to pay it out to

8   those who are harmed, why does it matter whether only some

9   filed a proof of claim?  I know that's relevant to the class

10  proof of claim argument but how is that relevant to this

11  dispute?

12          MR. GAZES:  Well, there's an inconsistency here.  The

13  bar date was set --

14          THE COURT:  Right.

15          MR. GAZES:  -- within the bankruptcy context --

16          THE COURT:  But the DOL filed within the bar date.

17  Didn't they file their proof of claim timely?

18          MR. GAZES:  Yes, they did.  They did file a proof of

19  claim timely but they're not pursuing on behalf of the

20  employees, they're pursuing the -- they're seeking to be

21  recompensed as an agency to pay out to the employees.  The

22  employees have a reservation of rights under the statute to

23  pursue their individual claims.

24          THE COURT:  Right.

25          MR. GAZES:  So I divided that where --

1           THE COURT:  But is there a valid -- I mean if they

2       have standing to do that under their statute, then I'm not sure

3       how the bar date fits into it as long as they filed their

4       timely claim -- the DOL has.  Maybe I'm missing something here.

5       It just seemed to me that -- I mean is there some argument that

6       they shouldn't be allowed to pay it out to the people because

7       the individuals didn't file their proof of claim?

8           MR. GAZES:  I believe so, Judge.

9           THE COURT:  All right.

10          MR. GAZES:  Because the claims themselves are part of

11      the bankruptcy process and the DOL is seeking to collect 100

12      percent of all those claims and pay employees to the prejudice

13      of those who did file proofs of claim who hadn't filed them and

14      absent the DOL agency action those employees who did not file

15      the proofs of claim would not participate in the distribution

16      if Your Honor was to find that employees who failed to file the

17      proofs of claim are not entitled to a distribution.  So, hence,

18      it's an inconsistency.

19          We have the Code saying, we believe, that you have to

20      file a proof of claim in order to participate in the

21      distribution, we have the DOL asserting on behalf of its agency

22      that they're entitled to collect for all the employees and then

23      distribute that money to all the employees.  In addition,

24      there's that reservation of privacy rights for the individual

25      employees to pursue their claims themselves.  So I'm like in

1    three different fields here just alone with the DOL itself.

2              THE COURT:  But can't the -- I understand there are

3    practical benefits in keeping everything together but doesn't

4    the New York statute permit that the individual claimants can

5    do it at the same time that the DOL does it?  I mean

6    administratively, I agree, it's kind of odd but doesn't it

7    contemplate that you can be subject to both individual

8    claimants' lawsuits and a DOL lawsuit?

9              MR. GAZES:  Which is exactly why the 105 injunction

10   is needed.

11             THE COURT:  Okay.

12             MR. GAZES:  That's the whole purpose of it.

13             THE COURT:  So it's really basically for just

14   coordinating all of this?

15             MR. GAZES:  It is, otherwise the estate is expending

16   funds dealing with three or for different fronts --

17             THE COURT:  Right.

18             MR. GAZES:  -- unnecessarily and, frankly, it's quite

19   burdensome.  I mean we have a host of issues in the case as

20   Your Honor is aware and that's why the case primarily converted

21   to deal with and to be defending actions, the allowance of

22   which or the allowability of those claims in all these

23   different forms just doesn't make any sense.

24             THE COURT:  Okay.

25             MR. GAZES:  It's just not cost effective.  In

1    addition, there could be findings-of-fact made by the

2    administrator in the DOL proceeding which will have res

3    judicata effect in my class action proceeding if there is going

4    to be one or in the claims resolution process and we don't

5    believe that that's appropriate as well and which is another

6    reason why the 105 injunction is necessary.

7              THE COURT:  If you could just give me a thumbnail

8    sketch about the financial status of the estate at this point?

9    Is it likely that there will be a distribution to unsecured

10   creditors?

11             MR. GAZES:  That all depends on the resolution of

12   these claims.  That also depends on the resolution of the

13   503(b)(9) claims which we've started to work on, they're

14   anywhere from $5 million to $11 million.  If I'm able to bring

15   down those claims to the numbers that I think I can I believe

16   that there will be depending, again, on what my preference

17   recoveries are going to be.  That's where our principal asset

18   is at this point and I have approximately $4.8 million in the

19   account now.  I've burned about $600,000.00 in legal fees so

20   far subject, of course, to Your Honor's approval and that would

21   be in addition to the accountant's fees.

22             THE COURT:  And is there a possibility, though, that

23   -- or a reasonable possibility that the estate won't be able to

24   pay priority claims?  Leave aside admin claims for a second,

25   I'm just focusing on, you know, the priority claims because a

1    portion of these claims are priority as opposed to admin, a

2    portion that would arguably -- are unsecured so what's the

3    picture on paying still --

4              MR. GAZES:  I don't know, Your Honor.  I have not

5    addressed the -- I have not viewed or looked at the priority

6    claims at this point.

7              THE COURT:  And is there a reasonable possibility of

8    administrative insolvency?

9              MR. GAZES:  That all depends on our resolution of the

10   503(b)(9) claims and our recoveries from the preferences.

11             THE COURT:  Okay.

12             MR. GAZES:  I mean, look, I have $80 million in

13   preference actions out there.  You know, if I'm projecting just

14   a ten percent recovery and I bring in $8 million there is a

15   likelihood that at least I'll be reaching the priority if not

16   the general unsecureds.

17             THE COURT:  Okay.  All right.  Okay.

18             MR. GAZES:  So, you know, I think this has been

19   briefed to death, Your Honor.  I know you've seen a lot of

20   papers on this so we moved under the 105 injunction.  We

21   believe that we meet the threshold requirements for the 105

22   injunction and we believe that there is a possibility and

23   probably a great likelihood of inconsistent judgments.  We're

24   exposing the estate to risk of collateral estoppel.  There will

25   be burdens on the estate's management, meaning I'll be devoting

1   my resources and time towards the claims resolution process wit

2   the DOL action and we'll be diverting all my manpower towards

3   that process and we believe that under Section 105 we should be

4   able to enjoin the DOL from pursuing the administrative action

5   at this time.

6            THE COURT:  Okay.

7            MR. GAZES:  We also moved under 7065, Your Honor.  We

8   believe that we've reached all of the elements of that as well.

9   We believe that we have shown that there's irreparable harm

10  coming to the estate, that there's a likelihood of success on

11  the merits.  I've given the Court a good deal of a semblance of

12  our defenses that we have to the action, in particular, under

13  the United Healthcare that we were a liquidating fiduciary as

14  of the date of the filing which would wipe out any Warren Act

15  claims, both federal and state, and, thirdly, we believe that

16  the police power as we've recited in our memo, Your Honor, that

17  this isn't a matter of police power.  As Judge Gonzalez found

18  in Enron with the California state attorney general, this is

19  simply they're seeking a monetary award, there is no public

20  purpose to pursuing this action and, therefore, there is no

21  exception to the 362 stay and they should be stayed under 362

22  from pursuing this and then, fourthly, as I mentioned before,

23  Your Honor, we believe under the first filing that the action

24  should be disposed of in this court in one proceeding so that

25  we won't divert it in so many different avenues.

 1            THE COURT:  Okay.

 2            I guess -- I know that the parties spent a fair

 3    amount of time on the merits of the debtor's defenses.  It

 4    seemed to me, though, that if you're looking at 7065 the merits

 5    here really are just on whether the stay applies or not; right?

 6    I mean are we -- that's the injunction we're looking to; right?

 7            MR. GAZES:  That's correct, Your Honor.  The

 8    complaint doesn't set forth the defenses to the Warren Act

 9    claims, the complaint is seeking the injunction.

10            THE COURT:  Right.

11            MR. GAZES:  That's correct, Your Honor, although

12    there is a --

13            THE COURT:  And we're beyond the era -- well, we're

14    not even there anyway on the facts.  I think everyone would

15    acknowledge that this isn't a far-fetched claim.  We're talking

16    about the validity of defenses to a claim so beyond that we're

17    not -- I think the case law has moved beyond the notion that

18    the bankruptcy judge is supposed to look somehow at the

19    underlying statute, you know, and it's the underlying

20    regulation or state law statute and determine whether it's

21    somehow violative of the Bankruptcy Code and I don't think

22    that's where we are anymore so -- okay.  All right.

23            I saw the claimants -- the individual claimants, the

24    class claimants' statement of support.  Unless you want to add

25    anything, I've read that and I understand that.

1        Okay.  So let me hear from the DOL.

2        MR. KUPFERBERG:  Seth Kupferberg from the Attorney

3  General's Office.  With me also is Glynnis Ritchie, who is law

4  student and who came to observe the Court which he had a good

5  opportunity for this morning.

6        THE COURT:  Well, you saw a lot of different things

7  today, didn't you?

8        MR. RITCHIE:  Yes.

9        THE COURT:  All right.

10        MR. KUPFERBERG:  We, by the way, filed a response to

11  the claimants which you may not have seen because --

12        THE COURT:  I didn't see that; no.

13        MR. KUPFERBERG:  -- we turned it around, I think,

14  pretty quickly under the circumstances.

15        THE COURT:  Okay.  Could you give me the five second

16  version of that response?

17        MR. KUPFERBERG:  Of the response?

18        THE COURT:  Yes.

19        MR. KUPFERBERG:  They seem to draw two distinctions

20  that the Trustee had not drawn.  They said, as I understood

21  their papers, that the police power exception only applied if

22  the police power proceeding had been initiated before the

23  bankruptcy filing and only applied if it was a statute which

24  only the government unit could enforce and I just listed -- I'm

25  not sure I reread all of the cases that refute that but I

1   listed half a dozen or eight cases that had previously been

2   cited in which the facts showed that those limitations do not

3   exist, that is --

4           THE COURT:  Okay.

5           MR. KUPFERBERG:  So that's what the response was.

6           THE COURT:  Okay.  All right.  You can respond now.

7           MR. KUPFERBERG:  The central issue, we believe, is

8   that 362(b)(4) permits the Department of Labor to conduct this

9   proceeding under the police power exception to the automatic

10  stay and I think that the law on that is clear.  I understand

11  it's been argued that the _Enron_ case is to the contrary.  I

12  think the _Enron_ case has been questioned in subsequent cases

13  even on its own terms.  The facts of the _Enron_ case were

14  unique.  As the opinion makes clear, it talks about how this

15  was the most publicized investigation of fraud in the history

16  of the United States and there had been seventeen criminal

17  prosecutions and the California attorney general had said that

18  the only purpose of this additional proceeding was to collect

19  money for the state.  On those unique facts the _Enron_ decision

20  said that there is no deterrence in fact being served by this

21  police power proceeding.  All the other cases -- every other

22  case, I believe, including under labor statutes, under non-

23  labor statutes, they all speak about how it's police power

24  whether you're trying to collect restitution or not and the

25  Supreme Court, although not in a bankruptcy context, has said

1   that severance statutes -- the main severance pay statute which

2   was quite similar overall to the Warren Act statutes, although

3   it was enacted before the federal Warren Act statutes, so the

4   form was different but the Supreme Court has said that that's

5   unexceptional police power in the Ford Halifax case.

6          So I think it's absolutely clear that this is within

7   the 362(b)(4) exception and that the Department of Labor has a

8   right to go ahead.

9          Now, the Trustee has said even if that's true that

10  you should still enjoin it under Section 105.  I think it's

11  questionable whether Section 105 authorizes overriding the

12  362(b)(4) exception.  There are a couple of cases that say

13  indictum that it does authorize that but those cases didn't

14  deal with 362(b)(4) so it didn't matter to those cases.

15  There's another case that indicates indictum that it may not

16  authorize overriding it but in that case as in this one we

17  believe there was no basis for an injunction anyway so there

18  was no need to reach that issue.  But if Section 105 ever

19  authorizes overriding 362(b)(4) there would have to be some

20  kind of extraordinary factual showing to do it and there

21  certainly is not that kind of showing here.

22         What has the Trustee pointed to as a basis to enjoin

23  the DOL proceeding?  I think, basically, two things; one is he

24  says that it's going to be burdensome to the estate.  Well,

25  essentially, all the work of preparing for this DOL proceeding

1   has been done.  He's told you how much time he spent going

2   through the records, how he met with the DOL and they were able

3   to agree on the figures.  All of that has already been done.

4   There's an agreement on the figures.  The only issue that

5   remains to be determined in the DOL proceeding is are there

6   valid defenses to the Warren Act which would obviate there

7   being any liability and as to those he's prepared -- as Your

8   Honor said, he's set forth in some detail what he thinks the

9   defenses are, he has a long affidavit setting forth what he

10  thinks the defenses are.  All that remains to be done is to

11  present those defenses which, I submit, is not an extraordinary

12  burden on the estate.  It's in fact much less than much else

13  that the Trustee is doing.  If that kind of so-called burden

14  were enough to justify an injunction, then 362(b)(4) would

15  never apply because that kind of burden always exists when you

16  have to go forward. Of course, you have to show up and explain

17  what your case is but this is not the kind of burden that has

18  been found to be sufficient even in the cases where litigation

19  against non-debtors was being enjoined which is what I think

20  105 is about, not about this kind of situation, and the other

21  thing he's pointed to is he says, well, if the class action

22  goes ahead and if the commissioner has decide some factual

23  issues there may be a collateral estoppel effect.  Well, to the

24  extent that that's true the reason that 105 cases look to

25  collateral estoppel when they're enjoining litigation against

1    non-debtors which as I've said is what I think 105 is really

2    about is they say it's true that the litigation which we're

3    being asked to enjoin is against non-debtors and, therefore,

4    normally wouldn't be covered by the automatic stay but in this

5    case the non-debtors who are being sued are executives of the

6    debtor, principles of the debtor or associates of the debtor,

7    affiliates of the debtor, so it may be that even though the

8    judgment will formally be against the non-debtor, the debtor

9    will ultimately be found to be in privity and the debtor will

10   be collaterally estopped and, therefore, the debtor will have

11   been denied either the opportunity to defend itself because of

12   the collateral estoppel or it will have been denied the right

13   to stay out of a non-bankruptcy forum if it appears in the non-

14   bankruptcy forum and presents a case and so for that reason

15   collateral estoppel has sometimes been found to justify a 105

16   injunction.

17           But in this case, 362(b)(4), as I've said, means that

18   the debtor does not have a right to stay out of the non-

19   bankruptcy forum.  The debtor is required to appear in the DOL

20   proceeding and it can present its defenses and it's obviously

21   prepared to present its defenses.  The work to do that has been

22   done and if it then should be collaterally estopped by some

23   factual finding there's nothing unjust about that; the debtor

24   will have had its day in court, the debtor will have presented

25   its case.  If there's some factual issue on which it then is

1   estopped, so be it.  I mean Your Honor has said this is kind of

2   an odd statute in that it does contemplate that there can be

3   two separate proceedings but that's what the statute does.

4              THE COURT:  Are there any regulations that deal with

5   that?

6              MR. KUPFERBERG:  Any regulations that deal with what?

7              THE COURT:  With that fact.

8              MR. KUPFERBERG:  With the fact that there can be two

9   separate proceedings?

10             THE COURT:  Right.

11             MR. KUPFERBERG:  No, not that I'm aware of, Your

12  Honor.

13             THE COURT:  So how does -- if individual claimants or

14  through a class action lawyer start a lawsuit to enforce the

15  New York state Warren Act statute and it's pending before, you

16  know, a New York state supreme court judge, there's no

17  regulation that says that has to stop or that that governs if

18  the DOL subsequently starts its own enforcement action?

19             MR. KUPFERBERG:  No.  The statute says that payments

20  awarded by one are deducted from any payments awarded by the

21  other.  You can't collect twice.

22             THE COURT:  Right.

23             MR. KUPFERBERG:  But, no, to my knowledge there are

24  no regulations dealing with that.  There is, however, a case

25  which we cited which is not under a Warren Act but which

1   involved an administrative proceeding that was permitted to go

2   ahead under 362(b)(4) and a similar adversary proceeding had

3   been brought in the bankruptcy court to resolve essentially the

4   same issue of whether money was owed under the Davis-Bacon Act,

5   the federal prevailing wage law, and the bankruptcy court --

6   this is the Western Drywall case, it's a case from Idaho but I

7   believe it's exactly the same situation and it's right -- the

8   bankruptcy court said, since I don't want both to go ahead at

9   once and I cannot stay the administrative proceeding before the

10  federal Department of Labor because 362(b)(4) permits it go to

11  ahead, so what I'll do since I don't want them to go ahead

12  simultaneously is I'll stay the adversary proceeding and then

13  we'll resume the adversary proceeding at the conclusion of the

14  administrative proceeding.

15           Now, I'm not urging you to do anything --

16           THE COURT:  Which one was filed first in that case?

17           MR. KUPFERBERG:  In that case I believe that the

18  administrative proceeding had been filed.

19           THE COURT:  And it was seeking ongoing relief, it

20  wasn't just fixing a claim; right?  The debtor was doing

21  something that was still violative?

22           I understand your point about you don't need to do

23  that but that particular case, I thought, did that.

24           MR. KUPFERBERG:  I'm just not sure.  I would have to

25  go back and check on that particular case.

 1                THE COURT:  Okay.  All right.

 2                Let me cut through this a little bit.  It seems to me

 3    that there is an issue which the parties really have not

 4    addressed here which is that there was an adversary proceeding

 5    started here and there's an earlier claim filed here that the

 6    parties and I have been dealing with and, normally, my

 7    understanding is that that would go first; leave aside

 8    bankruptcy law, it would seem to me that if you had the

 9    hypothetical that I just mentioned, a group of former employees

10    started a case to enforce the New York Warren Act against

11    Fortunoff in state supreme court and then the DOL started one

12    later, I think the state supreme court judge would say, well,

13    I'm first, and maybe I'm missing that but I think that's what

14    would happen and it doesn't matter whether there's a stay or

15    not I just think that's how it would proceed and --

16                MR. KUPFERBERG:  Well, Your Honor --

17                THE COURT:  Let me finish.

18                MR. KUPFERBERG:  I'm sorry.

19                THE COURT:  Because I think that leaving aside the

20    mandatory aspects of that it just seems to me that as a

21    practical matter that's what the parties should be doing here.

22    I mean I guess I don't understand what the haste is to fix this

23    claim when I think, ultimately, particularly given the

24    appellate rights under the New York statute, in all likelihood

25    it's going to be done here in a way that is more efficient and

1    cheaper for everybody.  This isn't a case where we're talking

2    about making a legal distinction under 362(b)(4) based on the

3    state seeking injunctive relief as opposed to enforcing a

4    claim.  I understand your points on that.

5            On the other hand, as a practical matter, this is

6    fixing a claim.  It's fixing a monetary amount and then whether

7    there's defenses to it.  In bankruptcy cases nine times out of

8    ten those are negotiated in light of what creditors are going

9    to get in the case.  We don't really know that yet, we're going

10   to know it pretty soon, I think, and generally speaking, Mr.

11   Gazes is pretty good on his projections because, you know, he

12   makes his living litigating preference cases and objecting to

13   claims so he knows the merits of that and, by the way, he

14   settles most of those cases as you know.  So at that point you

15   all will be in the -- all of you; the federal Warren Act

16   claimants, the individual state Warren Act claimants and the

17   Department of Labor, will be in a position to deal with this in

18   a dollars and sense manner and it just seems to me that, you

19   know, I'm scratching my head at why given that and given the

20   timing here of when things were filed there's a rush to go and

21   litigate this issue and I agree with you that most of the

22   points in the _Enron_ case can be viewed as sui generous,

23   primarily the point that Judge Littlefield pointed to, which is

24   that Judge Gonzalez made a big point of the fact that in

25   addition to the state of California investigating _Enron_ there

1    was this huge federal investigation.  So the California points

2    seem to be sort of the tail wagging the dog but he also points

3    out that it really does seem to be forum shopping given that

4    the California AG had filed a proof of claim and it was there

5    and it was going to be dealt with in the bankruptcy process.

6    This is one step beyond that because you have sort of the

7    beneficiaries of what the DOL is trying to do here already

8    active and, by the way, they're asserting both federal and

9    state claims so I'm going to be dealing with them anyway.  It

10   seems to be kind of poking a finger in their eye to say that

11   they have to, you know, file two proceedings when I can --

12   ultimately, I can deal with all the Warren Act claims, not just

13   state but federal, and as a practical matter you all are going

14   to deal with them because ultimately I'm convinced you'll

15   settle them.

16          So you all have been working together very well until

17   this point in putting off this issue.  I'm just having a hard

18   time seeing why you shouldn't put it off some more.

19          MR. KUPFERBERG:  There's a legal response which is

20   that we think that 362(b)(4) just gives us an absolute right to

21   go ahead which you understand --

22          THE COURT:  I understand that.

23          MR. KUPFERBERG:  -- but let me address the --

24          THE COURT:  I'm not necessarily agreeing with it but

25   I understand it.

1          MR. KUPFERBERG:  No, but you understand it whether

2     you agree with it or not.

3          THE COURT:  Right.  Right.

4          MR. KUPFERBERG:  So by addressing the practicalities

5     I just want to make clear that I'm not --

6          THE COURT:  No, I know.

7          MR. KUPFERBERG:  -- waiving that in any way.

8          THE COURT:  Absolutely.

9          MR. KUPFERBERG:  That even if you think we're being

10    impractical we still don't think you have the right to do it.

11         THE COURT:  Right.  Right.  You have a right to be

12    impractical.  I understand that.

13         MR. KUPFERBERG:  Right.  Right.  Okay.

14         But let me address the practicalities.  It's true

15    that they filed their adversary proceeding before we scheduled

16    our -- or formally sent out a subpoena.  In every other way our

17    proceeding, I think, is far more advanced than theirs.  We've

18    met with the Trustee, we've reached agreement on the numbers

19    and the reason that it took a long time to initiate the formal

20    proceeding as I think the reply declaration makes clear is that

21    we sent out a request for information at about the same time

22    that the purported class action was filed.  It took a long time

23    for us to get the information back.  We were trying to wait

24    until we could reduce the numbers to a correct figure and

25    that's what took a long time.  That's why we filed on the bar

1    date or the day before the bar date, we were hoping to get it

2    down to an accurate figure that hadn't been done yet.  As it

3    turned out the initially filed claim was considerably higher

4    than turned out to be justified when we had had a chance to

5    look at all the records.

6         The reason it took a while for the formal initiation

7    of the administrative proceeding was not that we were sitting

8    back and doing nothing while the class action plaintiffs were

9    actively pursuing all kinds of discovery and there were lots of

10   proceedings in the class action cases.  In reality, the

11   situation is almost exactly the reverse.  If you look at

12   anything but the date of the filing, I think by any other

13   measure our action is far more advanced and it would make far

14   more sense to just complete this quickly.

15        THE COURT:  But, of course, all of that was being

16   done also in the context of trying to liquidate the claim that

17   was filed in the bankruptcy case.

18        MR. KUPFERBERG:  But it began even before the claim

19   was filed in the bankruptcy case.  It was -- but, yes, that's

20   right.

21        THE COURT:  But I mean all of the progress you've

22   made with Mr. Gazes in fixing the -- or coming close to fixing

23   the dollar amount has been in the context of -- it could easily

24   be in the context of resolving the claim too.

25        MR. KUPFERBERG:  Well, it serves both purposes.

 1            THE COURT:  I guess on the (b)(4) -- well, no, I'm

 2    sorry, you had more to stay on that.

 3            I mean is there some reason that there needs to be --

 4    how fast would this happen even?

 5            MR. KUPFERBERG:  Well, the hearing was scheduled for

 6    July 15th until it was put off because of the filing of this

 7    complaint.

 8            THE COURT:  Right.

 9            MR. KUPFERBERG:  I think it would have been completed

10    by this time probably.

11            THE COURT:  But then it's by -- then you have this

12    review process; right?

13            MR. KUPFERBERG:  Well, if they want to appeal to a

14    state court they can; yes, but the other thing I wanted to say

15    is I think that there are -- and this may account for -- you've

16    called it "forum shopping" -- I think that in 362(b)(4) case it

17    can be called "forum shopping."  One could always say, well,

18    why does the government need to liquidate this in the way it is

19    choosing?  It could just as well liquidate the claim in

20    bankruptcy court.  But I think the forum shopping is probably

21    on the part of the Trustee and I think that part of the reason

22    for that is that there are defenses to the class action claim

23    which in the context of the DOL proceeding basically, although

24    he's tried to argue that they exist in the context of the DOL

25    proceeding, I don't think they do; the main one being that in

1    the context of the class action claim there would be a serious

2    question at least -- and I am not taking any position on it,

3    our sympathies, I think, would be with the plaintiffs on it,

4    but Mr. Gazes will certainly argue that those employees who

5    didn't file by the bar date individually cannot be included in

6    that class action claim.  Now, that's an issue that would have

7    the potential, I guess, to drive down the amount substantially

8    --

9            THE COURT:  But, again, I raised this point with Mr.

10   Gazes too.  I'm having a hard time with this dispute because

11   unlike the federal Warren Act the DOL has the ability to bring

12   something on behalf -- not on behalf of but to distribute the

13   proceeds of a recovery to all the victims; right?

14           MR. KUPFERBERG:  Right.

15           THE COURT:  I don't know whether DOL has any criteria

16   for that and it would take into account whether they filed a

17   proof of claim or not, I don't know.

18           MR. KUPFERBERG:  It would not.

19           THE COURT:  Well --

20           MR. KUPFERBERG:  I don't believe commissioner would,

21   I guess it would be up to her but I don't believe that she

22   would.

23           THE COURT:  Okay.

24           MR. KUPFERBERG:  What I'm saying is that that issue

25   can be completely avoided, you know, the litigation of that

1    issue, the briefing of that issue, the consideration of that

2    issue, none of that is going to matter in the DOL proceeding --

3              THE COURT:  But it's still in front of me.  That's

4    why the first file point is important.

5              MR. KUPFERBERG:  Well, it --

6              THE COURT:  It would seem to me that we should deal -

7    - I mean you're just leaving them hanging then.

8              MR. KUPFERBERG:  I think that it would -- if the

9    commissioner finds -- I guess it would be in front of you in

10   connection with the federal claim but --

11             THE COURT:  No, it wouldn't because that's -- what

12   I'm saying is if you prevail, if I find that the stay doesn't

13   apply and you go ahead and litigate this issue and you

14   ultimately prevail, what are they doing in the meantime?

15             MR. KUPFERBERG:  What is who doing in the meantime?

16             THE COURT:  What are the state individual claimants

17   and class claimants doing in the meantime?  I mean it just

18   seems to me that's one of the reasons they should all be

19   together so that you could focus on that issue which is the

20   glitch, I think, in the statute.

21             MR. KUPFERBERG:  Well, one thing that --

22             THE COURT:  How do you -- I'm sorry, can I interrupt

23   you?

24             How do you deal in practice with the situation where

25   individual or class claimants are litigating and the DOL is

1    litigating, too, on their behalf?  I mean you do that in

2    separate proceedings?

3                MR. KUPFERBERG:  The statute seems to contemplate --

4                THE COURT:  I know the statute says you can --

5                MR. KUPFERBERG:  Yes.

6                THE COURT:  -- but in practice what do you do?

7                MR. KUPFERBERG:  Well, in practice -- I don't know

8    that it's -- it's a new statute and I don't think it's arisen

9    except in this case but --

10               THE COURT:  Well, all right.  I'm suggesting that

11   maybe we should focus on that because it creates a real

12   problem.

13               MR. KUPFERBERG:  Well, what I'm suggesting that if

14   the Court considers it a real problem the appropriate thing to

15   do in this case would be to let the DOL action go ahead and the

16   class complaint which Mr. Gazes said that they've sat back up

17   until now, they can continue to sit back --

18               THE COURT:  Well, in the meantime the people that

19   you're looking to collect on are opposing that and they say,

20   well, we want to control our destiny, we want to litigate those

21   issues because we think, you know, we'll do it better.  I don't

22   know.  They'd want to have a say in it at least.

23               MR. KUPFERBERG:  Well, Your Honor, with respect and

24   without casting aspersions, the only way in which I can see

25   that -- I mean I think that the real issue is that to the

1    extent that there's recovery through the class action, class

2    counsel is likely to be able to ask for attorneys fees and to

3    the extent that there is a recovery through our action that's

4    more difficult.  I don't see any other --

5            THE COURT:  Well, but I don't think it's just the

6    fees, I think it's who they want to have litigating on their

7    behalf.  I mean I just, you know --

8            MR. KUPFERBERG:  We are not telling the Court not to

9    let them proceed as well.  If the --

10           THE COURT:  Then there's a potential for different

11   results and that would be a disaster.

12           This is what I'd like you to do.

13           MR. KUPFERBERG:  Yes.

14           THE COURT:  Because this issue has not been dealt

15   with.  I'll give you my preliminary views on the (b)(4) point

16   but I think, ultimately, there's more to it than that.

17           On the (b)(4), I think there is still some validity

18   to the notion of looking to the primary purpose of the

19   government's action and I understand that there is here as with

20   all sorts of other labor provisions, there is a true regulatory

21   purpose; you don't want companies terminating employees without

22   their required notice and in effect getting away with paying

23   less for a GOB sale than, you know, the people who comply with

24   the law out there but, clearly, that's not the only purpose

25   here.  It's -- you know, there's a claim filed in the case

1    looking for recovery of money and so, therefore, I have to

2    decide the primary purpose and I think in that regard the

3    existence of the claim here and the existence of the claim by

4    the overlapping beneficiaries of the DOL suit is highly

5    relevant and, ultimately, I think that's how the <u>Enron</u> case can

6    get reconciled with the other cases is that fact and the fact

7    that -- you know, I don't see the Trustee -- if this were a

8    case where the Trustee was dragging his feet, then I think it

9    would be a very different point; the state, you know, clearly

10   has a right as part of its regulatory mandate to get a result

11   here.  I don't think the Trustee is dragging his feet, I think

12   he's moving it along as rapidly as you'd normally move it

13   along.

14            So I'm still up in the air on that aspect of the

15   (b)(4) point but what I am troubled by is the fact that I have

16   the claim and I have the request for class status by the

17   individual claimants and both the claim and that was first and

18   there's clearly an overlap, there's clearly a potential for

19   disparate results and my concern is that even if this were not

20   a bankruptcy case, the first court that had it would take it

21   and there's a lot of validity behind that doctrine, the first

22   filed doctrine.  Now, I know there are exceptions to it and the

23   like.  Frankly, I'd like you all to brief that issue.  I mean

24   if people really want to have a long opinion on 362(b)(4) and,

25   you know, the first filed doctrine and all of these issues I'm

1    happy to do it but I really think this isn't the case where

2    people really want to do that because I think you have a

3    Trustee who is doing his job and wants to get this over with

4    and unless I'm missing something I'm able to read the Warren

5    Act -- the state Warren Act -- it just makes more sense for me

6    to deal with all these claims at once; there's a federal and

7    state Warren Act claim in front of me as well as a state one.

8    The state one, there's overlapping beneficiaries and I'm like

9    95 percent sure it's going to be settled.  This isn't the case

10   to be rushing to -- this is not like people who aren't getting

11   paid their tips, you know, like Judge Garrity's case.  I would

12   have done exactly what he did in that case; this is, you know,

13   the debtor wasn't paying the tips.  The Trustee is going to pay

14   what he owes here -- what the estate owes and it's going to be

15   decided on, I think, a very quick and practical timetable and I

16   doubt there will be an appeal and it just seems to me -- I'm

17   talking to you now just on a practical basis that you all ought

18   to focus on that in addition to briefing this first filed

19   issue.

20          MR. KUPFERBERG:  When do you -- I did notice the

21   first filed issue but I thought there was enough briefing and I

22   --

23          THE COURT:  I know.

24          MR. KUPFERBERG:  When do you want briefing on that?

25          THE COURT:  I don't know, thirty days from today?

1          What's not coming through to me -- and maybe it

2     should but it's just not, I haven't picked up on it -- is that

3     I don't sense a real regulatory purpose in having this issue --

4     this claim liquidated.

5          MR. KUPFERBERG:  Well, as I tried to argue in the

6     papers and apparently not clearly enough, there is a kind of a

7     declaratory aspect to adjudicating police power cases.  I think

8     that this is clear from the SEC v. Brennan case and it's clear,

9     really, from all the cases in which -- and there are many of

10    those -- in which a debtor was out of business and there are

11    many cases in which it was clear that little or no money would

12    actually be collected and the police power is at stake because

13    --

14         THE COURT:  I understand that but in terms of the

15    timing I don't see it.  I mean Brennan, having represented him,

16    was a creep; all right?

17         MR. KUPFERBERG:  I didn't realize Your Honor

18    represented him --

19         THE COURT:  Well, not for very long but, I mean

20    that's not what's happening here.  The people that ran their

21    restaurant -- the Nungun [sic] restaurants -- were creeps.  I

22    just don't see that here.  I don't know if that gets into an

23    opinion but I think that it's important in terms of evaluating

24    the issue.

25         MR. KUPFERBERG:  But the declaratory value of, for

1    example, adjudicating the -- let me just finish briefly.

2              THE COURT:  Okay.  All right.

3              MR. KUPFERBERG:  Of adjudicating, for example, the

4    unforseen business circumstances --

5              THE COURT:  Right.

6              MR. KUPFERBERG:  -- defense or the liquidating

7    fiduciary defense --

8              THE COURT:  Right.

9              MR. KUPFERBERG:  -- or there's another defense whose

10   name is escaping me for the moment but the declaratory value of

11   saying what do those mean under the New York Warren Act and the

12   deterrent purpose served by clarifying that has nothing to do

13   with whether Mr. Fortunoff is a creep or not.

14             THE COURT:  I understand that, however, it's going to

15   be declared one way or another; right?  I mean it's not like

16   they're trying to avoid -- the Trustee is not trying to avoid

17   that issue.

18             MR. KUPFERBERG:  Yes, but the point is that the

19   government unit -- that's what the police power exception

20   means; that the government unit has a right to declare it, that

21   it's -- and you can call that forum shopping but --

22             THE COURT:  Well, but it isn't -- you know, it is

23   different.  That's an important distinction, I think, here.  It

24   isn't really the government -- well, that's why I think it may

25   be forum shopping because it's not the government unit saying,

1   I'm enforcing this, it's an adjudicatory body enforcing it and

2   I think that's a big difference.

3          You know, what you're arguing to me really is more

4   abstention or Sonax than before.  I mean this isn't the DOL

5   enforcing this; right?  This is --

6          MR. KUPFERBERG:  I think it is the DOL.  I'm not sure

7   -- I don't understand your point.

8          THE COURT:  Well, the claim is being enforced.  It's

9   really just who enforces it.

10         We're not preventing the DOL from expeditiously

11  getting a determination and, frankly, even collecting on it.

12  The Trustee is not fighting that, he just wants to have it done

13  in an orderly way and we're really just talking about what

14  adjudicatory body determines those defenses.  That, to me, is

15  more of an abstention issue than a (b)(4) issue.  The

16  enforcement power there is whether DOL can file a claim so that

17  someone can adjudicate the issue in the forum they want and I

18  don't know how much that really is enforcement as opposed to

19  forum shopping.

20         MR. KUPFERBERG:  I agree that there are some

21  similarities to abstention but I think that what Your Honor is

22  saying could be said of every 362(b)(4) case.  It can always be

23  said that the government unit can enforce this claim by coming

24  into the bankruptcy court and having the bankruptcy court

25  decide it but the point of the 352(b)(4) exception is that you

1    don't have to go into the bankruptcy court, that you can go to

2    the same forum that you would have gone to in the absence of

3    the bankruptcy --

4           THE COURT:  Well, and what I'm saying is in this

5    context where we have the beneficiaries of the statute here

6    already and this is the forum they want and you have the

7    potential for inconsistent results and, frankly, this was

8    first, I'm just not sure that the (b)(4) is that clear in that

9    context.  I'd rather not have to write an opinion on that

10   issue.  I really think that -- you know, again, if the Trustee

11   is dragging his feet, then, yes, then I understand your point

12   completely.  I just don't see -- this doesn't seem to me to be

13   the right one, it's just going to be another case to

14   distinguish.

15          MR. KUPFERBERG:  When do you want the briefing on --

16          THE COURT:  Thirty days from today.

17          MR. KUPFERBERG:  Thirty days.

18          THE COURT:  And you can write simultaneous briefs and

19   then if you want, I'll give you ten days to do a reply, both

20   sides.

21          MR. KUPFERBERG:  Okay.

22          THE COURT:  You should e-mail them to chambers.

23   Normally, I don't like things e-mailed to chambers until I've

24   ruled but I will have forgotten about this thirty days from now

25   so you should e-mail it so I'll remember it.

 1          MR. KUPFERBERG:  E-mail the brief to chambers?

 2          THE COURT:  Yes.

 3          MR. KUPFERBERG:  Okay.

 4          THE COURT:  As well as, of course, to each other.

 5          If you want to respond to the point that was in the

 6  recently filed thing by the DOL you can do that in that same

 7  brief.

 8          MR. GAZES:  Your Honor basically covered the point

 9  that I think we were trying to make and I think you brought it

10  out which is that the police power only applies as an exception

11  if the DOL is going to be burdening [sic] certain conduct.  So

12  as to deter it, that's what we're doing.

13          THE COURT:  All right.

14          MR. GAZES:  So what are the --

15          THE COURT:  But that's been briefed already.

16          MR. GAZES:  I think you're right, Your Honor, so I

17  have nothing further.

18          THE COURT:  Okay.  All right.  Okay.

19          But, you know, I really think you guys should use

20  that thirty days also to focus on the claims.

21          MR. GAZES:  We're trying, Your Honor.  I've made the

22  point over and over again.  I'm representing the very same

23  parties that these parties are representing.  I mean they are

24  the beneficiaries of this estate.  What I recover is going to

25  inure to their benefit and, you're right, it is a settleable

1    issue -- the amount -- because of the defenses which creates

2    the gray here.

3             THE COURT:  Okay.

4             MR. GAZES:  And we just need to put that off and I

5    believe my other half here is willing to wait to see what that

6    resolution might be depending upon --

7             THE COURT:  What resolution?

8             MR. GAZES:  What the estate is going to have.

9             THE COURT:  Oh.  Well, maybe you're enough along so

10   you can deal with it not in terms of paying money but fixing

11   the claim.

12            MR. GAZES:  Yes.

13            THE COURT:  I mean it just seems to me that you don't

14   have to win the legal point of every issue, you can settle them

15   and this may be one to settle.

16            MR. KUPFERBERG:  Well, we'll look at it, Your Honor,

17   but we have discussed and I mean I will take back what you've

18   said.  I don't know what else I can say on it.

19            THE COURT:  Okay.  All right.

20            MR. GAZES:  Thank you, Your Honor.

21                         * * * * *

22

23

24

25

<u>CERTIFICATION</u>

\* \* \* \* \*

I certify that the foregoing is a transcript from an electronic sound recording heard in the United States Bankruptcy Court, Southern District Of New York, 12:25 to 13:22, of the proceedings in the above-entitled matter.


S/ Carla Nutter

CARLA NUTTER


Dated:  September 28, 2010